PERRY LEWIS, TRUSTEE, ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
RIDGEFIELD
(AC 19865)

Lavery, C. J., and Schaller and Dupont, Js.

Argued November 2, 2000—officially released March 13, 2001

*Robert A. Fuller*, for the appellant (plaintiff).

*Thomas W. Beecher*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiffs, Perry Lewis, Basha Szymanska[1] and Downington Manufacturing Company (Downington), appeal from the judgment of the trial court dismissing their administrative appeal from the decision of the defendant planning and zoning commission of the town of Ridgefield (commission) to amend two sections of the Ridgefield subdivision regulations. The plaintiffs claim that the court improperly found that the amendments neither classically nor statutorily aggrieved them and, therefore, improperly concluded that they lacked standing to maintain the appeal. We agree with the plaintiffs and reverse the judgment of the trial court.

The parties do not dispute the following facts. On September 8, 1998, after several public hearings, the commission adopted certain amendments to §§ 2-31[2] and 4-39[3] of the subdivision regulations of the town of Ridgefield (town) governing lot area calculations. The revision to § 2-31 expanded the definition of "lot area," whereas the § 4-39 amendment added a new description

[1] Szymanska is a plaintiff in this action both individually and as trustee. She is the named trustee of certain acres held in trust for her and for Lewis, her husband.

[2] The commission amended § 2-31 of the regulations by adding the following language: "Lot area. The total horizontal area of the lot lying within the lot lines, provided that no area of land lying within any street line shall be deemed a portion of any lot area. In calculating the minimum required lot area, ponds and lakes shall be excluded. In addition, not more than twenty percent (20%) of land area having slopes of twenty-five percent (25%) or greater as measured in ten-foot contour mapping and consisting of contiguous areas totaling three-thousand (3,000) square feet or more, shall be included."

[3] The commission amended § 4-39 by inserting the following subsection in its entirety: "Lot area calculations. In calculating the minimum required lot area, the area of ponds and lakes shall be excluded. In addition, not more than twenty percent (20%) of land area having slopes of twenty-five percent (25%) or greater as measured in ten-foot contour mapping and consisting of contiguous areas totaling three-thousand (3,000) square feet or more, shall be included."

of the method for calculating lot area. The amendments provided that the calculation of total horizontal area of a lot shall exclude land underneath lakes and ponds. Moreover, they provided that the total lot calculation shall only include 20 percent of land having slopes of 25 percent or greater. The court noted that "[t]he effect of the amendments upon property not yet subdivided is to require individual lots to have an area greater than the two acres required by the zoning regulations if ponds, lakes or slopes meeting the criteria are included within a proposed lot. . . . In this way, the number of subdivision lots created from an undeveloped parcel is reduced." The amendments became effective on September 18, 1998. The commission adhered to statutory requirements and published notice of the decision, and the plaintiffs filed a timely appeal.

The plaintiffs collectively own 277 acres[4] of the town's 4121 acres[5] of subdividable land, which land the amendments affect. As owners of at least 6 or 7 percent of the land affected by the amended regulations, the plaintiffs appealed from the enactment of the amendments. On May 21, 1999, following an aggrievement hearing, the court dismissed the appeal for lack of aggrievement. The court also determined that since the plaintiffs lacked standing, the appropriate vehicle to challenge the regulations was a declaratory judgment action rather than a direct appeal from the administrative decision. The court noted that if the plaintiffs had actually applied to subdivide their property, an adverse

---

[4] Szymanska and Lewis, wife and husband, own a twelve acre parcel of subdividable land as individuals. Szymanska holds one ninety acre parcel of subdividable land in trust for herself and Lewis. Downington owns a 183.5 acre parcel, the deed to which exempts eight acres as owned by the president of the company, thereby leaving a 175 acre parcel capable of subdivision.

[5] The regulations technically affect 4436 acres in the town, but the Silver Springs Country Club, containing 315 acres, is excluded from the subdividable land total.

action by the administrative agency would constitute aggrievement and allow them to appeal from that action as well as the denial of any challenge to the validity of the regulations. This appeal followed. We will provide additional facts where the subsequent discussion necessitates.

The primary issue of this appeal is whether the plaintiffs are entitled to appeal from the enactment of the regulations as aggrieved parties. If they are aggrieved, they are entitled to bring an administrative appeal rather than a declaratory judgment action. See *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 582, 715 A.2d 46 (1998).[6]

In reviewing a finding of aggrievement, our standard of review is well settled. Aggrievement presents a question of fact for the trial court. *Bakelaar* v. *West Haven*, 193 Conn. 59, 65, 475 A.2d 283 (1984). We do not, therefore, disturb such a finding on appeal unless the subordinate facts do not support it or it is inconsistent with the law. *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 496, 400 A.2d 726 (1978). "We will reverse the trial court only if its conclusions are clearly erroneous and violate law, logic, or reason or are inconsistent with the subordinate facts." *Zoning Board of Appeals* v. *Planning & Zoning Commission*, 27 Conn. App. 297, 301, 605 A.2d 885 (1992). Thus, if the court's conclusion that aggrievement exists violates law, reversal is appropriate even if the subordinate facts are correct. See *Davis* v. *Westport*, 61 Conn. App. 834, 843, 767 A.2d

---

[6] The plaintiff in *Stafford Higgins Industries, Inc.*, was clearly aggrieved and aggrievement, therefore, was not the issue in that case. That case, however, established that a general challenge to the validity of legislation may lie in an administrative action. "[W]e abandon the *Cioffoletti* [v. *Planning & Zoning Commission*, 209 Conn. 544, 563, 552 A.2d 796 (1989)] rule requiring that general attacks on the validity of legislation be brought in the form of declaratory judgment actions instead of substantive appeals." *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 582.

1237 (2001). With those basic principles in mind, we turn now to the issues presented.

The plaintiffs claim that the court incorrectly determined that the amendments to the regulations did not aggrieve them. We agree.

As a jurisdictional matter, an appellant must demonstrate aggrievement to maintain an administrative appeal. Aggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction. *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 373, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991). Two broad yet distinct categories of aggrievement exist, classical and statutory. *In re Shaquanna M.*, 61 Conn. App. 592, 597, 767 A.2d 155 (2001).

Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. *Hall* v. *Planning Commission*, 181 Conn. 442, 444, 435 A.2d 975 (1980). Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. Id. Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 103, 717 A.2d 1276 (1998).

Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. *Cole* v. *Planning & Zoning Commission*, 30 Conn. App. 511, 514–15, 620 A.2d 1324 (1993).

On appeal, the plaintiffs maintain that the commission's action aggrieved them both classically and statutorily. We first consider whether classical aggrievement exists.

I

The plaintiffs argue that they established classical aggrievement because, unlike a zoning amendment, which is of general townwide application, a change to subdivision regulations only affects subdividable property. They note that subdividable property in the town constitutes only a small fraction of the town's total land. As such, they argue, their interest is particular and specific to them. The plaintiffs concede that general amendments to land use regulations do not traditionally satisfy the first part of the classical aggrievement test, but assert instead that "a change of regulations applying only to a particular zone covering a small area of the municipality [namely, subdividable property] is appealable by an owner of land within the zone . . . ."

The defendant responds that the amendments at issue in this case have the same practical effect as general amendments to land use regulations and, therefore, the plaintiffs must attack the amendments by way of a declaratory judgment rather than a zoning appeal. The defendant argues that the changes apply to all parcels that have the potential of subdivision and, consequently, the amendments affect the plaintiffs' property in the same way as they affect all other tracts of potentially subdividable land in the town. Although we agree with the defendant that the amendments treat all potentially subdividable land similarly, we disagree with its ultimate conclusion that such treatment precludes a finding of classical aggrievement.

The following additional facts are necessary to our discussion of classical aggrievement. Neither party disputes the basic figures. A generous estimate suggests

that the amendments affect only 20 percent of the land in the town, leaving 80 percent of the town's acres unaffected. The commission's planning director, Oswald Inglese, suggested at several public hearings that the total area affected by the amendments would likely be far less than 20 percent and estimated that the number may be closer to 5 percent or 7 percent.[7] John McCoy, a licensed professional engineer, investigated the status of properties and the effect the amendments would have on the land in the town. At the aggrievement hearing, he testified that the amendments would affect a maximum of 20 percent of the land.

McCoy also testified as to the specific effect the amendments would have on the plaintiffs' property. According to McCoy, the Lewis-Szymanska property would yield thirty-nine lots under the unamended regulations. The amendments' new method for lot calculation would decrease the total number of lots to thirty-one. McCoy also testified that the amendments would cause the Downington parcel to lose three lots, reducing the total from fifty-seven to fifty-four. The plaintiffs would collectively lose, therefore, eleven lots as a result of the amendments. McCoy then testified that, on the basis of his knowledge, a lot in a two acre zone of the town sells for between $250,000 and $350,000.

## A

As previously noted, classical aggrievement requires an identifiable legal interest that a decision adversely

---

[7] At the June 2, 1998 public hearing, Inglese stated: "I don't think you are looking at more than 5 percent to 7 percent [of the town's undeveloped residential land that the amendments will affect]." At the September 1, 1998 public hearing, James McChesney, a planning and zoning commissioner, stated: "I think we are going to find [that the impact of the amendments] is quite insignificant. I think all the lake areas have already been subdivided, so we are not going to have any lakes or ponds. It is probably only the steep slope portion that is probably left to us." Later at that same public hearing, Inglese stated that he believed that the overall impact on the town was going to be "very limited." At the aggrievement hearing, counsel for the defendant also referred to Inglese's "estimation of 5 [percent] to 7 percent of the open space."

affects. The defendant suggests that if the action affects other property owners similarly, the first part of the classical aggrievement test remains unsatisfied. We disagree with such a narrow, bright line rule.

In *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 610 A.2d 617 (1992), the plaintiffs appealed from an administrative decision to increase lot size in a particular zone from 40,000 square feet to 80,000 square feet. Our Supreme Court noted that "[a]s owners of land in zone B [the zone affected by the amendments], the plaintiffs are aggrieved parties. See General Statutes § 8-8 (b) [providing that an aggrieved party may appeal]; *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 502–503, 264 A.2d 566 (1969)." *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 376 n.3. Although our Supreme Court did not offer an analysis of its aggrievement conclusion, it concluded that the plaintiffs, as landowners in the affected zone, were aggrieved. We find that conclusion dispositive of the plaintiffs' claim in the present case.[8]

We see no practical difference between an amendment that affects a particular zone, as in *Timber Trails Corp.*, and an amendment that affects a very limited amount of property in a town, as in this case. In both situations, in which the total area is sufficiently restricted, affected property owners constitute aggrieved parties.

We also find support for our conclusion in *Summ* v. *Zoning Commission*, 150 Conn. 79, 186 A.2d 160 (1962).

---

[8] The plaintiffs rely on *Timber Trails Corp.* as authority for claiming *statutory* aggrievement. We read that case, instead, as establishing *classical* aggrievement for parties such as the plaintiffs. We base that reading on the *Fletcher* case cited by our Supreme Court in *Timber Trails Corp.* as support for the court's conclusion that the plaintiffs were aggrieved in *Timber Trails Corp. Fletcher* is a classical aggrievement case that, in fact, predates the statutory aggrievement provision of § 8-8 (a) (1), which the legislature adopted in 1977.

In *Summ*, a town adopted a certain regulation that authorized the zoning commission, "subject to specified standards and conditions, to issue a special use permit for the use of land for research and development laboratories in any zone in the town." Id., 82. The authority to issue a permit, however, was limited to a total of 240 acres in the entire town. Id., 83. In that case, the amount of affected land was sufficiently restricted so that the plaintiffs, owners of residential property in the town, satisfied the first prong of classical aggrievement.[9] The court held that the plaintiffs could be adversely affected by the adoption of the regulation and were entitled to appeal. *Summ* applies equally to the facts of this case. The plaintiffs here have demonstrated a specific interest affected by the amendments, the first prong of classical aggrievement, because those amendments apply only to tracts of land in the town capable of subdivision, which land covers only a small area of the town's total acreage.

In its discussion of classical aggrievement, the court in this case did not address our Supreme Court's conclusion in *Timber Trails Corp.* It relied instead on several Superior Court decisions and concluded: "Here, while the plaintiffs own substantial property, other landowners are also affected by the subdivision amendments. The first prong of the classical aggrievement test is therefore unsatisfied." The court intimated that absent

---

[9] The defendant argues that *Summ* has been overruled. *Summ* has been overruled, however, only to the extent that it relied on *Mills* v. *Town Plan & Zoning Commission*, 145 Conn. 237, 140 A.2d 871 (1958). See *Sheridan* v. *Planning Board*, 159 Conn. 1, 12–13, 266 A.2d 396 (1969). In *Summ*, our Supreme Court relied on *Mills* only for the proposition that a change in the comprehensive plan of zoning automatically results in aggrievement. That proposition of automatic aggrievement was overruled in *Mott's Realty Corp.* v. *Town Plan & Zoning Commission*, 152 Conn. 535, 540, 209 A.2d 179 (1965) ("[s]o far as the second *Mills* case holds that a change in the comprehensive plan of zoning necessarily creates an aggrievement, ipso facto, it is overruled").

evidence that the regulations did not affect any other properties in the town, an individual could not establish classical aggrievement. Classical aggrievement does not require, however, that a plaintiff be the only person affected by the adverse decision or even that the plaintiff be among a small group of affected persons. Like the plaintiffs in *Timber Trails Corp.*, the plaintiffs in the present case own property affected by certain amendments, which amendments only apply to a limited number of acres in the town. We find that the plaintiffs have adequately demonstrated an identifiable legal interest that the community as a whole does not share and have, thus, satisfied the first prong of the classical aggrievement test.

## B

We turn now to the second prong of the classical aggrievement test, namely, whether the commission's decision has specially and injuriously affected the plaintiffs' property interest. The plaintiffs argue that McCoy's undisputed testimony satisfies the second prong. The plaintiffs note that the defendant did not offer any evidence to contradict or discredit McCoy's conclusion that the amendments reduce the number of lots into which the plaintiffs can now subdivide their property.

The defendant appears to argue, as the court also implied, that the plaintiffs' injury is too speculative to satisfy the second requirement for classical aggrievement. According to that argument, the plaintiffs cannot demonstrate a special and injurious effect until they actually file a subdivision application. We disagree.

The suggestion that the plaintiffs in the present case must first file a subdivision application is similar to one we considered and rejected in *Cioffoletti* v. *Planning & Zoning Commission*, 24 Conn. App. 5, 7–8, 584 A.2d 1200 (1991). In that case, a town adopted a regulation that limited the time that excavation activities would

be allowed. The plaintiffs, sand and gravel business operators, challenged the regulation, arguing that it would force them to cease use of their property before they otherwise would do so. The defendant in *Cioffoletti* argued that the plaintiffs' action was premature until such time as they were actually denied a permit. This court disagreed that "an appealable issue [did] not exist until the plaintiffs [were] actually denied a permit upon reapplication at the end of four years." Id., 7.

Although *Cioffoletti* is not an aggrievement case, we held that the law did not require a property owner to defer a challenge to a regulation's validity until an administrative agency denied an application for a permit. We recognize that the plaintiffs in *Cioffoletti* had a personal and legal interest in an existing business that the challenged regulation would undoubtedly affect after a set period of time. That distinction notwithstanding, we believe that the reasoning in *Cioffoletti* similarly applies to the present case. The law does not require that the plaintiffs here file a subdivision application and await an adverse decision from the commission when they have demonstrated unequivocally that the amendments have diminished the value of their property. The plaintiffs own property that if they divided today would yield eleven fewer lots than if they had divided it in 1997, lots which sell for a minimum of $250,000.

We find further support for our conclusion in both *Bombero* v. *Planning & Zoning Commission*, 40 Conn. App. 75, 669 A.2d 598 (1996), and *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 374. In *Bombero*, a plaintiff landowner brought a declaratory judgment action challenging the constitutionality of a certain subdivision ordinance.[10] The trial court in

---

[10] A declaratory judgment action provides the setting for a lesser interest sufficient to establish classical aggrievement, but is, nevertheless, authority for our conclusion.

that case denied relief because the plaintiff had failed to file a subdivision application or express any intention to do so. The trial court determined that this failure precluded a showing of any adverse impact on the property. We reversed the judgment of the trial court and stated that "[t]he fact the plaintiff has not applied to subdivide his property is not determinative of whether the plaintiff has been adversely affected by the adoption of the regulation." *Bombero* v. *Planning & Zoning Commission*, supra, 87. A plaintiff is entitled to ascertain, with reasonable certainty, whether a certain regulation is valid and that regulation's effect on her rights as a property owner. See id., 88.

Moreover, in *Timber Trails Corp.*, discussed in part I A of this opinion, our Supreme Court, without analysis, determined that the plaintiffs in that case were aggrieved. The court did not discuss whether the plaintiffs' interest was too speculative to satisfy the second prong of classical aggrievement, yet the court found that the plaintiffs there were aggrieved. As previously noted, the plaintiffs in *Timber Trails Corp.* owned property in a zone that the disputed regulation affected. Their status alone as owners of property in the affected zone, the extent of their legal and personal interest, satisfied the test of classical aggrievement. The plaintiffs' interest in *Timber Trails Corp.* is no less speculative than the plaintiffs' interest in the present case. We see, therefore, no reason to find that the plaintiffs in the present case have fallen short in demonstrating aggrievement.

The defendant here argues that *Timber Trails Corp.* is distinguishable from the present case in that the amendment in *Timber Trails Corp.* immediately affected the property. We believe that the challenged amendments in this case also have an immediate impact on the plaintiffs' property. The amendments instantly affect the value of the property. Irrespective of whether

the plaintiffs subdivide today or in five years, the fact remains that the amendments have reduced the number of lots that the plaintiffs' properties contain. That reduction constitutes an immediate economic impact, and we see no logical reason to require that the plaintiffs actually file a subdivision application before allowing them to institute an action as aggrieved persons. Like the landowner in *Bombero*, the plaintiffs here are entitled to ascertain with reasonable certainty whether the amendments are valid and, therefore, the effect of the amendments on their property. We conclude that the plaintiffs in the present case have satisfied the second prong of classical aggrievement and that the court improperly determined that the plaintiffs were not classically aggrieved. As classically aggrieved parties, the plaintiffs were entitled to bring a direct appeal and need not have brought a declaratory judgment action. See *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 582.

## II

We turn now to the issue of statutory aggrievement. The plaintiffs also argue that, pursuant to § 8-8 (a) (1), the amendments statutorily aggrieved them. We agree on the basis of our decision in *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 514–15.

The plaintiffs argue that the law concerning statutory aggrievement applies not only when nearby property owners or a specific parcel of land is involved, but also in those situations in which general amendments to zoning regulations specifically affect a landowner's property. The defendant counters that a property owner is not statutorily aggrieved when the decision affects no particular piece of property. We agree with the plaintiff.

Section 8-8 (a) (1) provides in relevant part that an aggrieved person "includes any person owning land that abuts or is within a radius of one hundred feet of any

portion of the land involved in the decision of the board." In *Cole*, certain amendments permitted the establishment of commercial sawmills in two residential zones. The plaintiffs owned property in those zones and appealed from the adoption of the amendments. We determined that the plaintiffs were statutorily aggrieved by virtue of § 8-8 (a) (1) as owners of land within the affected zones. Id., 514. "The plaintiffs, however, as owners of land within either the R-3 zone or the R-5 zone, the zones to which the amendment pertains, are aggrieved parties by virtue of General Statutes § 8-8 (a) (1). . . . [W]e determine that the plaintiffs were aggrieved parties by virtue of their ownership of land within the zone to which the amendment pertained . . . ." (Citations omitted.) *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 514–15.

The defendant attempts to distinguish *Cole* by arguing that the zone change in *Cole* instantly and specifically affected the property owners, whereas the amendments in the present case do not have an immediate impact on the property. We find that argument unavailing for two reasons. First, the question of whether there has been an immediate impact pertains to the issue of whether a party has sufficiently established an injury, which constitutes an element of classical aggrievement, not statutory aggrievement. A statutorily aggrieved person need not have sustained any injury. See *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 671, 560 A.2d 975 (1989) (*Shea, J.*, dissenting). Second, even if the distinction identified by the defendant had any bearing on the issue of statutory aggrievement, we reiterate the conclusion we reached in part I B of this opinion, that the plaintiffs have shown an instant economic impact on their property independent of the filing of a subdivision application. We read *Cole* to stand for the proposition that the plaintiffs, as owners of land within the affected zone, are statutorily aggrieved.

Because we conclude that the plaintiffs are aggrieved parties, both classically and statutorily, they need not have brought an action for a declaratory judgment.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.