[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF APPEAL
This is an administrative appeal brought by the plaintiff, Carl M. Dunham, Jr. ("Dunham"), arising from the decision of the New Milford Planning Commission (the "Planning Commission') to amend its subdivision regulations. CT Page 10630
On May 24, 2001, the Planning Commission held a public hearing to consider a seventh draft of amendments to its subdivision regulations. Legal notice of the public hearing was published in the New Milford Spectrum. (Return of Record [ROR], Items 14 15.)
Among the amendments considered were changes to: Sections 2.2.1a (5) and 2.2.1b (2) of the regulations to authorize the Planning Commission to require a bond to ensure the completion of all required private driveway and common driveway improvements; Section 2.3.2b of the regulations to prohibits dead end streets within a subdivision with more than twenty lots "unless the Commission determines on the basis of the facts before it . . . that [the street] can accommodate a greater number of lots without endangering the public health, safety, convenience and welfare;" Section 2.8.1a and 2.8.1b of the regulations to authorize the commission to include as a condition of a subdivision approval off site improvements for drainage and sewerage; Section 2.9.1 of the regulations to authorize the commission to require a set aside for open space of not less than fifteen percent of the total area of a proposed subdivision; and 2.9.2 of the regulations to authorize the commission to require "the open space to have direct access to a public street."
On May 30, 2001, the Planning Commission voted to adopt the amendments to the subdivision regulations including the aforementioned amendments that are the subject of this appeal, effective June 2, 2001. The Planning Commission published notice of its decision in the Danbury News-Times on June 1, 2001. (RoR, Item 16.) On June 15, 2001, this appeal followed.
 JURISDICTION
General Statutes §§ 8-28 and 8-8 govern an appeal taken from a decision of a planning commission to the superior court. A statutory right to appeal requires strict compliance with the statutory provisions which create the right. Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
 AGGRIEVEMENT
"As a jurisdictional matter, an appellant must demonstrate aggrievement to maintain an administrative appeal." Lewis v. Planning ZoningCommission, 62 Conn. App. 284, 288, 771 A.2d 167 (2001). "Aggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction." Id. "Two broad yet distinct categories of aggrievement exist, classical and statutory." Id.
"Classical aggrievement requires a two part showing. First, a party CT Page 10631 must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest." Id. "Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest." Id. A landowner affected by a town's amendments to its subdivision regulations satisfies the classical aggrievement test and thus can bring an administrative appeal even though he has not filed a subdivision application with the planning and Zoning Commission. SeeLewis v. Planning Zoning Commission, supra, 62 Conn. App. 290-96.
In this case, the court finds that Dunham owns 790 acres of property in the town of New Milford. Approximately, 600 of Dunham's acres are subject to the subdivision regulations. Dunham is the single largest individual landowner in the Town of New Milford. The acreage's fair market value is affected by the town's amendments to its subdivision regulations. Dunham has demonstrated an identifiable legal interest that the community as a whole does not share and have. Dunham has further demonstrated that an economic impact on his property exists and thus a specific personal or legal interest has been specially and injuriously affected. See Lewis v.Planning Zoning Commission, supra, 62 Conn. App. 297
 SERVICE OF PROCESS
In pertinent part, General Statutes § 8-8 (b) provides that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)][1] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (f) further provides that "[s]ervice of legal process . . . shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." On June 1, 2001 the Planning Commission published notice of its decision in the Danbury News-Times. On June 15, 2001, this appeal was commenced by service of process upon the town clerk and the chairperson of the Planning Commission.
 DISCUSSION
SECTION 2.3.2 b — DEAD END STREETS
The court has determined that Dunham is an aggrieved party, however, the mere fact that a party is aggrieved does not mean that standing alone creates a justiciable issue. The regulation states in part that "No CT Page 10632 dead-end streets within a subdivision or street system within a subdivision shall service more that twenty (20) lots not including corner lots at the entrance unless the Commission determines on the basis of thefacts before it. . . . [t]hat it [the subdivision] can accommodate agreater number of lots. . . . (Emphasis added.) Regulation 2.3.2b.
"It is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." Kizis v. Morse DieselInternational, Inc., 260 Conn. 46, 52, 794 A.2d 498 (2000). Practice Book [§ 10-33] provides "[a]ny claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the [court] shall dismiss the action." "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." (Citations omitted; internal quotation marks omitted.) Kizis v.Morse Diesel International, Inc., supra, 260 Conn. 52.
"Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits, it must be justiciable." Mayer v. Biafore, 45 Conn. App. 554, 556, 696 A.2d 1282, cert. granted, 243 Conn. 912, 701 A.2d 331 (1997). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." Id., 556-57 "In the absence of a justiciable controversy, the courts have no jurisdiction." Kleinman v. Marshall, 192 Conn. 479, 484, 472 A.2d 772
(1984).
"The justiciability of a claim is related to its ripeness." CumberlandFarms, Inc. v. Town of Groton, 46 Conn. App. 514, 517, 699 A.2d 310, cert. granted, 243 Conn. 936, (1997). "The ripeness doctrine is the constitutional mandate case or controversy, U.S. Const. Art. III, [which] requires an appellate court to consider whether a case has matured or ripened into a controversy worthy of adjudication before it will determine the same." Neylan v. Pinsky, Superior Court, judicial district CT Page 10633 of New Haven, Docket No. 347072, (December 6, 1993, Zoarski, J.). "Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Id.
"The existence of an actual controversy is an essential jurisdictional prerequisite . . . It is not the province of our courts to decide moot questions, the determination of which cannot result in the granting of actual or practical relief. . . . In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions on points of law." (Citations omitted.) Fromer v. Tree Warden,26 Conn. App. 599, 600, 602 A.2d 1060 (1992).
Here, the decision as to whether more than twenty lots might be permitted in a particular subdivision is to be determined by the Planning Commission by reviewing the "facts before it." Thus there is no justifiable claim before the court.
Therefore, the appeal as it relates to Section 2.3.2b of the subdivision regulations is dismissed.
SECTION 2.8.1a and 2.8.1b — OFF SITE IMPROVEMENTS
Section 2.8 of the amended regulations provides that: "New developments may stress existing infrastructures beyond acceptable limits. The commission may require reasonable off-tract improvement necessitated by new development and, in such instances, shall require their inclusion with approved subdivision plans." Subsections 2.8.1a and 2.8.1b further provide that the commission may require off-site improvements for drainage and improvements to the town's sanitary sewer system in connection with a subdivision application. Dunham argues that these provisions are in excess of the Planning Commission's authority under General Statutes § 8-25.
A municipal planning commission, as a creature of statute, has only those powers expressly granted to it through Chapter 126 of the Connecticut General Statutes. Smith v. Zoning Board of Appeals,227 Conn. 71, 81, 629 A.2d 1089 (1993). The language of General Statutes § 8-25 authorizes local planning commissions to enact regulations dealing with "the land to be subdivided". The Connecticut Supreme Court has held that: "There is nothing in 8-25 that authorizes a planning commission to require a developer to improve an existing abutting public highway where no intersecting subdivision streets are being created."Property Group, Inc. v. Planning and Zoning Commission, 29 Conn. App. 18,23 613 A.2d 1364, aff'd. 226 Conn. 684, 628 A.2d 1277 (1992); SowinAssociates v. Planning and Zoning Commission, 23 Conn. App. 370, CT Page 10634 376-377, 580 A.2d 91 (1990).
Similarly, there is nothing in General Statutes § 8-25 that authorizes a planning commission to require a developer to improve an existing abutting sewer system; or an existing abutting drainage system, unless that drainage system ties into a state highway. With regard to drainage, § 8-25 states that a planning commission can provide for off-site drainage:
 including the upgrading of any down stream ditch, culvert or other drainage structure which, through the introduction of additional drainage due to such subdivision, becomes undersized and creates a potential for flooding on a state highway. . . .
Section 2.8.1a goes beyond requiring a developer to improve off-site drainage when that drainage flows to a state highway. It provides that in all cases, if the existing system functions inadequately or does not have adequate capacity to accommodate an applicant's stormwater runoff, the Planning Commission may require off-site improvements as part of a subdivision approval, including the installation, relocation or replacement of drains, culverts, catch basins and manholes. Section 8-25
authorizes none of these requirements.
With regard to sanitary sewers, Section 2.8.1b authorizes the Planning Commission to require a subdivision applicant to improve the town's sanitary sewer system if the existing system does not have adequate capacity to accommodate the applicant's flow, including the installation, relocation or replacement of collector, trunk, and interceptor sewers, pump stations and associated appurtenances.
In Gonthier v. Watertown Planning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 0119318 (July 12, 1995,Fasano, J.), a subdivision applicant appealed the denial of a subdivision application, which denial was based in part on the applicant's refusal to install dry lines off-site to the town's sewer system. The planning commission's regulations required that in areas where public water supply and/or sanitary sewage system are not available, dry lines, shall be installed in new and/or reconstructed streets when in the opinion of the water and sewer authority the extension of lines to the area will be accomplished before the ten year life span of the street pavement.
The trial court reversed the decision of the planning commission, holding that since compliance with this regulation would require construction to an "off-site" area, such regulation is invalid and compliance is not required as a precondition to the granting of an CT Page 10635 application for subdivision. The trial court noted that, though § 8-25
authorizes a regulation that compels the provision for water and sewage, it does not authorize the construction of water and sewer lines off the site of the subdivision, or in a public highway.
The issue of whether or not § 8-25 authorizes regulations requiring "off-site" improvements by applicants, has been the object of substantial litigation with authorities lining up on both sides. Authorities in support of Dunham's position note the apparent clear and unambiguous language of § 8-25 authorizing regulations dealing with "the land to be subdivided" as opposed to "off-site" improvements. "There is nothing in 8-25 that authorizes a planning commission to require a developer to improve an existing abutting public highway where no intersecting subdivision streets are being created." Property Group, Inc. v. Planningand Zoning Commission, 226 Conn. 684, 691, 628 A.2d 1277 (1993). As both parties point out, though the issue has been raised in a number of forums including our Supreme Court, it has yet to be resolved. See Id.
After a review of all the materials cited in both briefs, this court concludes that the regulations in question as applied in this matter exceed the authority of the enabling statute, § 8-25.
The Planning Commission's regulation concerning off-site improvements to the towns sewer system is also invalid in that the regulation concerns an area over which the Planning Commission has no jurisdiction or control. Municipal sewerage systems are governed by Chapter 103 of the Connecticut General Statutes, Section 7-245 et seq. Section 7-246
provides that any municipality, by ordinance, can establish a board or commission as its water pollution control authority, with the power to regulate the development, use and expansion of its sewer system. The New Milford Sewer Commission is that authority for the Town of New Milford. It has adopted sewer use regulations, which govern permits by an owner or developer seeking to connect to the town's sewer system. The Planning Commission's role in the sewer permit process is limited by General Statutes § 8-24. The General Statutes authorizes the planning commission to report to the sewer commission concerning a proposed expansion of the sewer system, no more. General Statutes § 8-24 (4). The New Milford Sewer Commission, not the Planning Commission, has final statutory authority over improvements to the sewer system.
For all of the foregoing reasons, the court sustains the Dunham's appeal related to Section 2.8.1 and Section 2.8.1b of the subdivision regulations.
SECTION 2.2.1a (5) and 2.2.1b (2) — BONDS FOR DRIVEWAYS
CT Page 10636
Sections 2.2.1a (5) and 2.2.1b (2) of the amended regulations authorize the Planning Commission to require a bond to ensure improvements to private driveways and private common driveways. General Statutes § 8-25
provides no statutory authority for the Planning Commission to require a subdivision applicant to post a bond for private driveway improvements as a condition of subdivision approval.
General Statutes § 8-25 provides that a planning commission can "prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided." (Emphasis added.) Section 8-25 also authorizes a planning commission to require "a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction. maintenanceand installation of such improvements and utilities within a periodspecified in the bond." (Emphasis added.) These provisions are designed to protect the municipality by assuring that public improvements in a subdivision, such as the streets, related drainage facilities, and public utility lines along the streets will be completed at the expense of the subdivider or the owners of subdivision lots.
General Statutes § 8-25 only authorize a planning commission to require a bond for roads and other public improvements. There is no statutory authority empowering a planning commission to require a bond for private subdivision improvements such as driveways. Bonding for the construction of private driveways is beyond the powers of the Planning Commission.
The powers of a planning commission under Chapter 126 of the General Statutes are strictly construed and planning commissions are not allowed to adopt subdivision regulations or exercise powers unless they are clearly granted by the enabling statutes. Brenton v. Oxford Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford, Docket No. 32373 (December 7, 1990, Fuller, J.), citing, Avonside Inc.Zoning Planning Commission, 153 Conn. 232, 236, 215 A.2d 409 (1965).
There is no provision in either the regulations or the ordinance requiring the construction of driveways on subdivision lots at the time of subdivision approval. Assuming the Planning Commission could determine whether proposed subdivision driveways could be built, which would meet the requirements of the regulations before approving the lots, the Planning Commission would necessarily have to require construction of the driveways or the obtaining of permits for the driveways as a condition of subdivision approval, a impractical requirement.
The court finds that no statutory authority exists vesting the Planning Commission with the power to require bonds for private subdivision CT Page 10637 improvements. Therefore, the court sustains Dunham's appeal related to Sections 2.2.1a (5) and 2.2.1b (2) of the subdivision regulations.
SECTION 2.9.2 — ACCESS TO OPEN SPACE
Section 2.9.2 of the amended regulations authorizes the Planning Commission to require a subdivision applicant to provide an access area at least ten feet wide through subdivision property for public access to open space land from an existing public street.
As stated above, a municipal planning commission, as a creature of statute, has only those powers expressly granted to it through Chapter 126 of the Connecticut General Statutes. Smith v. Zoning Board ofAppeals, supra, 227 Conn. 81. General Statutes § 8-25 provides, in relevant part: "that the commission may require the provision of open spaces, parks and playgrounds when, and in places deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan." While the General Statutes authorize a planning commission to require a developer to provide open space within the land to be subdivided, nothing in § 8-25 authorizes a planning commission to condition subdivision approval upon the subdivision applicant granting to the public a right of access across other subdivision property to reach open space land.
Section 2.9.2 of the amended regulations exceeds the Planning Commission's statutory authority in that General Statutes § 8-25 does not authorize the Planning Commission to require public access rights across private property through the subdivision approval process. The only authority a local planning commission has to acquire public easement rights over private property is contained in General Statutes § 8-29.
The court finds that no statutory authority exists vesting the Planning Commission with the authority to require a subdivision applicant to provide public access over subdivision land. Therefore the court sustains Dunham's appeal related to Section 2.9.2 of the subdivision regulations.
SECTION 2.9.1 — OPEN SPACE MIMIMUM
Dunham claims that the amended open space regulation constitutes an unlawful taking of property without just compensation in violation of thefifth amendment to the United States constitution (made applicable to the states through the fourteenth amendment) and of article first, § 11, of the constitution of Connecticut. Dunham bases this claim on the argument that the regulation does not satisfy the "rough proportionality" test established by the United States Supreme Court in Dolan v. City ofTigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Dunham CT Page 10638 contends that this test requires the commission to make specific findings that the fifteen percent open space requirement bears a sufficient relationship to the projected impact to proposed subdivisions and that the commission made no such findings before amending the subdivision regulation. Upon this same reasoning, Dunham further insist that the commission acted unreasonably and abused its discretion in enacting the amendment.
In Dolan the commission granted the plaintiff's application for a building permit, subject to two conditions. The conditions required that the plaintiff dedicate, by deed to the city, land to be used for a greenway for recreational visitors along a creek to minimize flooding and land to be used for a recreational, bicycle pathway to relieve traffic congestion. See Dolan v. City of Tigard, supra, 512 U.S. 379-80. The United States Supreme Court held that in order for these conditions to withstand constitutional challenge, an essential nexus must exist between a legitimate state interest and the permit condition, and if so, the conditions demanded by the permit must bear a required relationship to the projected impact of the proposed development. See Dolan v. City ofTigard, supra, 512 U.S. 386. Although the court found that the conditions were sufficiently connected to legitimate public purposes (Id., 388), the court concluded that the zoning commission had failed to make sufficient individualized findings to explain how the precise conditions being imposed were designed to advance these public purposes. Id., 389-90. The court characterized this need for individualized findings as a "rough proportionality test." Id., 391.
Consequently, under Dolan, in cases where a zoning agency acts in its adjudicative capacity and conditions approval of a zoning or building application on the applicant's granting of a public dedication, the agency "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." Dolan v. City of Tigard, supra, 512 U.S. 391.
Dunham's argument that the Planning Commission is required to satisfy the rough proportionality test from Dolan is misplaced. The Planning Commission acts in a legislative capacity when it amends its regulations, not in its adjudicative capacity. See Pierrepont v. ZoningCommission, 154 Conn. 463, 468, 226 A.2d 659 (1967). When an administrative regulation enacted by an agency through is legislative function is attacked as being invalid on its face, the regulation enjoys a presumption of constitutionality and the burden rests on the party challenging the regulation to prove its illegality. See Dolan v. City ofTigard supra, 512 U.S. 391 n. 8 ("in evaluating most generally applicable zoning regulations, the burden properly rests on the party challenging the regulation to prove that it constitutes an arbitrary regulation of CT Page 10639 property rights"); Aunt Hack Ridge Estates, Inc. v. Planning Commission,160 Conn. 109, 117, 273 A.2d 880 (1970) ("[t]o constitute a valid exercise of police power, both the legislation and the regulation must, of course, have a rational relation to the public welfare and must be reasonable and impartial"); see generally Agins v. Tiburon, 447 U.S. 255,100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Village of Euclid v. Ambler RealtyCo., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed.2d 303 (1926).
The leading Connecticut case on the legality of open space requirements is our Supreme Court's decision in Aunt Hack, supra, and contrary to Dunham's view, this case has not been undermined by the holding of Dolan
in cases involving the exercise of an agency's legislative functions. "The test which has been generally applied in determining whether a requirement that a developer set aside land for parks and playgrounds as a prerequisite to the approval of a subdivision plan is whether the burden cast upon the subdivider is specifically and uniquely attributable to his own activity. Where the requirement is uniquely attributable to the subdivider's activity, it has been held to be a permissible exercise of the police power." Aunt Hack Ridge Estates, Inc. v. PlanningCommission, supra, 160 Conn. 117-18. "Engaging in the activity is left to its own choice. When it undertakes to subdivide, the population of the area is necessarily increased and the need for open space for its people becomes a public one. Moreover, when it chooses to subdivide the land, the open space requirement renders the lots offered for sale more attractive and desirable to purchasers, a circumstance of value to the seller." Id., 119; see also Agins v. Tiburon, supra, 447 U.S. 255, 260 (a zoning regulation effects a taking if the ordinance does not substantially advance "legitimate state interests or denies an owner economically viable use of his land).
Within the framework of Aunt Hack Dunham dose not contend that the commission's adoption of the amended regulation is an excessive or unconstitutional exercise of the commission's police power. Dunham argues that the required set aside of not less than fifteen percent is mandatory in every residential subdivision without any requirement that the Planning Commission consider the need for open space in relation to the impact of the proposed subdivision. The court, however, cannot conclude that this regulation's fifteen percent open space requirement is so large or extreme that it is unconstitutional on its face. See generally, Aginsv. Tiburon, supra, 447 U.S. 255. In Aunt Hack, our Supreme Court explained in response to the confiscation argument made there, that "[b]asically. . . . the complaint is that the plaintiff should be able to assert an individual interest in filling the entire [or, in the present case, a larger] area with housing as superior to the public interest in maintaining a more healthful open space environment. For the reasons already discussed, the public welfare must be paramount." Aunt Hack RidgeCT Page 10640Estates, Inc. v. Planning Commission, supra, 160 Conn. 119.
The plaintiff "has the burden of proof of overcoming" the presumption that the regulation is constitutional, Troiano v. Zoning Commission,155 Conn. 265, 269, 231 A.2d 536 (1967). The court finds that Dunham has not met that burden.
Moreover, it must be emphasized that Dunham has not actually filed applications to subdivide his land. Dunham contends that the open space regulation constitutes a per se or facially offensive violation of his rights and not a violation based on any specific application of the regulation to his land. Thus, the full or actual impact of the regulation on Dunham's land is undetermined, and the law is well-established that the "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." (Internal quotation marks omitted.) Dolan v. City ofTigard, supra, 512 U.S. 384; accord Aunt Hack Ridge Estates, Inc. v.Planning Commission, supra, 160 Conn. 117.
The courts have upheld the constitutionality of fairly significant impacts on private property as part of the government's regulatory or preparatory functions. See, e.g., Santini v. Connecticut Hazardous WasteManagement SVC, 251 Conn. 121, 138-139, 739 A.2d 680 (1999), cert. denied, 530 U.S. 1225, 120 S.Ct. 2238, 147 L.Ed.2d 266 (2000). Additionally, although a court may consider whether the mere enactment of a rule constitutes a taking; see Agins v. Tiburon, supra, 447 U.S. 260-62; courts have also been cautioned against the disposition of confiscation claims in the absence of an actual application of the contested rule to the property in question: "Because what constitutes a taking is difficult to define and what amount is just compensation is difficult to calculate, a court, in the proper circumstances, is well advised to stay its hand to allow for political choices and settlements that are outside of the judicial competence. It is for the town . . . in the first instance to decide whether to exercise the police power in order to reach an accommodation with the plaintiffs in their desire to subdivide their properties or, alternatively, to deny the plaintiffs all subdivision rights and pay them compensation . . . Until specific subdivision proposals are submitted to the town zoning authorities, these plaintiffs have not established that they have been deprived of the reasonable and proper use of their properties." (Citation omitted.) Luf v. Southbury,188 Conn. 336, 353-54, 449 A.2d 1001 (1982).
For the foregoing reasons Dunham's appeal related to Section 2.9.1 of the subdivision regulations is dismissed.
By the court, CT Page 10641
 _________________ (Cremins, J)