[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by plaintiff Robert MacDonald from the decision of the defendant Zoning Board of Appeals of the Town of Waterford to deny his appeal from an order of the zoning enforcement officer. Michael E. Stein and Ellen M. Stein, owners of the property which is the subject of this appeal, appear as defendants.
For reasons hereinafter stated, the decision of the Board is reversed.
Plaintiff has instituted this appeal under the provisions of Connecticut General Statutes § 8-8b. Section 8-8b limits appeals to persons aggrieved by the decision appealed from. Pleading and proof and aggrievement are essential to establish subject matter jurisdiction over an appeal. Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192
(1996). The question of aggrievement is essentially one of standing.McNally v. Zoning Commission, 225 Conn. 1, 5-6 (1993).
Two broad yet distinct categories of aggrievement exist, classical and statutory. Lewis v. Planning Zoning Commission, 62 Conn. App. 284,288 (2001). Statutory aggrievement exists by legislative fiat. In cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. Colev. Planning Zoning Commission, 30 Conn. App. 511, 514-15 (1993). Connecticut General Statutes § 8-8 (a)(1) provides that "aggrieved person" includes any person owning land that abuts any portion of the land involved in the decision of the Board. The evidence indicates that plaintiff acquired title to property which abuts the property which is the subject of this appeal. Plaintiff has held title to such property at all times relevant to this action. It is therefore found that plaintiff is statutorily aggrieved and has standing to prosecute this action.
The record indicates that, on or about, October 6, 2000, defendants entered into a contract with Anne R. Juselis, trustee, whereby they agreed to purchase the property which is the subject of this appeal. The CT Page 2451 conveyance was conditioned upon defendants obtaining all necessary permits for construction of a house approximately 45 feet by 60 feet in size on the property.
Defendants had plans prepared and submitted to the zoning enforcement officer for approval. There were existing structures on the property and the plan submitted located the proposed dwelling on the site of the existing structures. The lot is nonforming and the existing structures were much closer to the property boundaries than allowed under the zoning regulations. The application was denied. A new application was then filed. This new application was for a smaller structure, more centrally located on the lot. This new application was approved by the zoning enforcement officer on December 6, 2000, and on January 25, 2001, defendants purchased the property.
On December 21, 2001, plaintiff appealed to the Board the decision of the zoning enforcement officer to issue the zoning permit to defendants. The appeal was brought under the provisions of Connecticut General Statutes § 8-6 and § 27 of the Waterford zoning regulations.
A public hearing was held on this appeal by the Board on February 7, 2002, at which time the parties were heard. On March 7, 2002, the Board voted to deny the appeal stating as its reason:
The zoning official acted properly, in accordance with the regulations of the Town of Waterford. No new nonconformity resulted from the action of issuance of the zoning compliance permit.
Within the time allowed by statute, plaintiff instituted the present appeal.
No questions have been raised concerning jurisdictional issues. All required notices appeared to have been properly published and no jurisdictional defects have been noted.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the Board. The function of the court in such a review is to determine whether the Board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals,152 Conn. 247, 248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the Board.Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion CT Page 2452 confirmed by the legislature on the Board. The court is limited to granting relief only when it can be shown that the Board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v. Zoning Board, 145 Conn. 597, 604 (1958). The burden rests with the plaintiff to prove the impropriety of the Board's actions. Burnham v. Planning Zoning Commission, supra, 189 Conn. 266.
Here, the Board was required to determine the reasonableness of the decision of the zoning enforcement officer. It was acting administratively in a quasi-judicial capacity in applying the regulations. Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 513-14
(1969). Since the issue before the Board was the propriety of the zoning enforcement officer's interpretation of Waterford Zoning Regulations, it became the duty of the Board to decide, within prescribed limits and consistent with the exercise of a legal discretion, whether the regulations applied to the situation and the manner of their application. Connecticut Sand Stone Corp. v. Zoning Board ofAppeals, 150 Conn. 439, 442 (1963).
Generally, it is the function of the Board to decide within prescribed limits and consistent with the exercise of its discretion whether a particular section of the zoning regulations applies to a given situation and in the manner in which it does apply. The court must then decide whether the Board correctly interpreted the section of the regulations and applied it with reasonable discretion. In applying the law to the facts of a particular case, the Board is endowed with a liberal discretion and its discretion and its exercise will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. The court reviews the record to determine whether it has acted fairly or with proper motives and upon valid reasons. Spero v. Zoning Board of Appeals,217 Conn. 435, 440 (1991).
"The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Citations omitted.)Id., 441. CT Page 2453
Plaintiff claims that in upholding the decision of the zoning enforcement officer, the Board acted improperly. In his complaint, he has set forth a number of claims of impropriety each of which will have to be considered. The court, however, is not bound to consider any claim not briefed. Shaw v. Planning Commission, 5 Conn. App. 520, 525 (1985);Moulton Brothers, Inc. v. Lemieux, 74 Conn. App. 357, 363 (2002).
The evidence indicates that the subject property lies at the intersection of Oswegatchie Road and Riverview Road, a gravel street, in the Town of Waterford. The lot is 8,838 square feet in area and is in the R-20 district. There were three structures on the property at the time the application for the zoning permit was filed. One structure was a frame cottage located two-and-a-half feet from the side line and seven-and-a-half to eight feet from the rear property line. There was also a shed and a three-car garage on the property. The Waterford Zoning Regulations require that building lots in the R-20 district have a minimum of 20,000 square foot in area. Section 4.4 requires a 50-foot front yard setback, a minimum 20-foot side yard setback and a minimum 50-foot rear yard setback in the R-20 zone.
It is clear that the lot and the frame cottage on the lot do not conform to the requirements for the R-20 zone. The zoning enforcement officer testified that he considered the cottage to be the principal structure on the lot and the other buildings to be accessory uses. According to the zoning officer, the cottage was built around 1938 on a separate lot. The other lots, including the lot on which the garage was built, were acquired around 1950, prior to the enactment of the zoning regulations.
Section 24.2 defines nonconforming uses as "land and/or buildings which lawfully existed prior to the enactment of the zoning regulations." Based upon this regulation, the zoning officer stated that he considered the property to be a nonconforming use. This would include the land and the cottage.
The zoning officer testified that building was allowed on nonconforming lots. Section 24.31 does permit the erection of single-family dwellings on nonconforming lots with certain restrictions. Under § 24.4.1, nonconforming structures could be expanded, but such expansions could not result in an expansion of the nonconformity.
Based upon the location of the cottage, the zoning enforcement officer concluded that this building was a nonconforming use with a two-and-a-half foot side yard setback and a seven-and-a-half or CT Page 2454 eight-foot rear yard setback line.
The first application filed by defendants utilized the building lines of the existing cottage resulting in setback lines approximating the existing lines. This application was rejected by the zoning officer because the proposed building was too large.
Defendant's second application was for a smaller building more centrally located on the lot. The relocation of the building on the lot resulted in the side yards being increased from two-and-a-half feet to twelve feet and the rear yard from seven-and-a-half or eight feet to seventeen feet. The zoning officer reasoned that the applicant could have built a 2,800 square foot building with the original side yard and rear setback lines. He concluded that the second application reduced the nonconformity and approved the application for a zoning permit.
Upon receipt of the zoning permit, defendants removed the existing cottage, garage and shed. Trees were also removed from the property. The foundation was dug and the pouring of footing was started. Upon the filing of plaintiff's appeal to the Board, the zoning permit was stayed and the zoning officer issued a cease and desist order preventing defendants from further work under the permit. See Connecticut General Statutes § 8-7.
 I.
Plaintiff claims that the zoning enforcement officer was in error when he determined that the Steins' cottage was a valid preexisting, nonconforming use protected under the provisions of Connecticut General Statutes § 8-2 (a) and § 24.4.1(b) of the zoning regulations. To be considered as a nonconforming use, the property must possess two characteristics. First, it must be lawful; and second, it must have been in existence at the time the zoning regulations making it nonconforming was effective. Cummings v. Tripp, 204 Conn. 67, 91-92 (1987).
It is argued by plaintiff that there is credible evidence in the record to support this claim. Plaintiff is correct in that there was some evidence in the record that the cottage on the property was no longer being used for residential purposes, but was being used for the parking of cars in connection with another residential lot.
There was, however, substantial evidence in the record to support a conclusion that the cottage, although not in the best condition, was a nonconforming residence. The tax assessor's records indicate that the cottage was configured for residential use with utilities and heat. There CT Page 2455 was also evidence from a former owner that the cottage had been routinely used as a seasonal residence for over 30 years and that it was always fully equipped for such use.
There was no evidence to support an abandonment of the nonconforming status of the property. "Abandonment is a question of fact which implies a voluntary and intentional renunciation." Cumberland Farms v. ZoningBoard of Appeals, 74 Conn. App. 622, 631 (2003). Abandonment is also defined by § 24.2.6 of the regulations.
The existence of contradictory evidence and the possibility of drawing two incorrect conclusions from the evidence does not preclude an administrative agency's finding of facts being supported by substantial evidence. Wolf v. Commissioner of Motor Vehicles, 70 Conn. App. 76, 83
(2002).
Here, with substantial evidence in the record that the cottage was a valid preexisting nonconforming use, plaintiff has failed to prove that the Board abused its discretion in upholding the zoning enforcement officer's decision to consider the cottage as a nonconforming use.
Plaintiff also claims that the lot itself is not a valid nonconforming use. It is argued that before the lot can be considered a nonconforming use, an undersized lot must have been part of a subdivision approved by the Planning Commission prior to the adoption of zoning regulations. This concept is difficult to understand and is not in accordance with § 8.2(a) or § 24.2 of the regulations, which includes, "land or buildings" within the definitions included in the zoning regulations. See also Fuller, Connecticut Practice Series, Land Use and Practice, Vol. 9, § 53.6, p. 580.
It is argued that the history of the lot precludes it from becoming a valid nonconforming use in that it was not a separate lot at the time the zoning regulations were originally enacted. The record indicates that the cottage was built on a small lot around 1938. The lot was part of a layout of small lots entitled "Oswegatchie Park," dated 1923. Subsequently, in 1950, the owner acquired three additional lots. The four lots together make up the 8,838 square feet of the lot which is the subject of this appeal.
Zoning regulations became effective in Waterford in June 1954.
At the time the regulations became effective, the property in question consisted of one small lot with the cottage and four separate adjoining lots. The configuration of lots and the structure were illegally in CT Page 2456 existence at the time the zoning regulations became effective and therefore acquired the status of a valid preexisting nonconforming use.
Although the issue was not specifically addressed by the zoning enforcement officer or the Board, it is logical to conclude that both of them, together with the Steins, assumed that there had been a merger of the separate lots into a single more conforming lot. Whether a merger has occurred depends on the intent of the owner. This is a factual issue based upon the owner's conduct under the surrounding circumstances.Carbone v. Vigliotti, 222 Conn. 216, 227 (1992); Fuller, Connecticut Practice Series, Land Use and Practice, Vol. 9, § 53.6, p. 580.
The merger of the separate lots into a single nonconforming lot would also be in keeping with the provisions of § 24.3 of the regulations.
In this case, all of the evidence in the record supports the assumption that there had been a merger into one lot. The previous owners utilized the entire parcel as one tract with the cottage being the residence and the garage and shed being accessory uses. In their application for a zoning permit, the Steins were under the impression that there had been a merger and the zoning enforcement officer was also under that impression.
It must therefore be found that the Board did not abuse its discretion in upholding the zoning enforcement officer's treatment of the lot which was the subject of the zoning application as one single nonconforming lot.
 II.
It is also claimed that the decision of the Board should be reversed since the zoning permit was based upon an improper application of the regulations pertaining to nonconforming structures. At issue here is the interpretation of § 24.4 "Non-Conforming Structures." Section 24.4 and § 24.4.1 of the zoning regulations provide as follows:
24.4 NON-CONFORMING STRUCTURES
For the purpose of these regulations, a non-conforming structure shall be defined as a structure which existed lawfully prior to the enactment of these regulations or any amendment thereto, which does not comply with the restrictions as to size, nature of construction, location of the structure on the land, or location of the structure in proximity to other buildings required by the regulations adopted subsequent to its CT Page 2457 construction, and which is continuously maintained after the effective date of such regulations or amendment thereto.
24.4.1 Any non-conforming structure lawfully existing at the time of the adoption of these regulations may be continued to be used, as long as such use is either permitted within the district in which it is located or is a legal non-conforming use; such structure may be expanded, modified or altered in accordance with the following provisions:
It is clear that the cottage existing on the lot as it did from about 1938 was a valid preexisting, nonconforming use and could be continued in use as a residence in the residential district. It is also clear that the cottage could be "expanded, modified or altered" in accordance with the regulations.
Subsection (b) of § 24.41 applies to residential nonconforming structures and provides as follows:
b. For residential structures, such expansion, modification or alteration is permitted provided that no new non-conformity or increased encroachment results, or no non-conforming use is established or expanded.
It is also clear that the cottage could have been expanded, modified or altered in accordance with this subsection. The problem is, however, that the zoning permit was not issued for such purpose but to allow the construction of a new residence at a different location from the cottage. The problem has been exacerbated by the fact that the cottage has been dismantled and removed from the lot.
The principal issue here is not the extension of an existing nonconforming side line and setback lines, but following the provisions of § 24.41 which only allows expansion of a structure lawfully existing at the time the zoning regulations became effective.
The defendants argue that the permit which allowed a more sensible location of the house and reduced the degree of nonconformity was in the spirit of § 24.4 of the regulations. In some way, this may be true, but it is not in accordance with the plain language of the regulations. To conclude that the structure authorized by the zoning permit was the expansion of the preexisting cottage would involve an interpretation which tortures the ordinary meaning of the legislative enactment. This is unreasonable. Spero v. Zoning Board of Appeals, supra, 217 Conn. 441. It must then be found that in granting the zoning permit, the zoning enforcement officer exceeded his authority and acted illegally. It must CT Page 2458 also be found that in upholding the decision of the zoning enforcement officer, the Board also acted illegally and contrary to the regulations.
 III.
Defendants claim in their brief that if it is determined that the Board acted improperly in upholding the zoning enforcement officer's decision to issue the zoning permit, plaintiff's appeal must fail because of the rule of municipal estoppel as set forth in Bauer v. Waste Management ofConnecticut. Inc. et al, 234 Conn. 221, 247 (1995). Unfortunately, this issue is not now before the court and cannot be considered for two reasons.
The first reason is that it was not pleaded.
The elements of municipal estoppel as set forth in Bauer v. WasteManagement of Connecticut. Inc., et al are as follows.
(1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents.
See also Town of West Hartford v. Rechel, 190 Conn. 114, 121 (1983); and Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344 (1976).
The determination of the elements of municipal estoppel require an evidentiary hearing. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 205
(1995). The issue was not raised by the pleadings. There was no evidentiary hearing in this case. The second problem arises out of the fact that this matter is before the court as an appeal taken under the provisions of Connecticut General Statutes § 8-8. Although § 8-8k authorizes the court to take additional evidence, the normal function of the court in such an appeal is to review the proceedings before the Board to determine if the Board acted illegally. Willard v. Zoning Board ofAppeals, supra, 152 Conn. 248-49. A zoning board of appeals, however, lacks equity jurisdiction and would be unable to decide an issue such as equitable estoppel.
Although there may be some authority for raising the issue of equitable estoppel in an appeal under § 8-8, a separate equitable action would CT Page 2459 appear to be more appropriate. Under the circumstances existing in this case, the issue of equitable estoppel is not before the court, and relief, based upon such a claim, cannot be granted.
For reasons above stated, judgment is entered for the plaintiff and the decision of the Board upholding the decision of the zoning enforcement officer is reversed.
 Joseph J. Purtill Judge Trial Referee
CT Page 2460