### TERESE B. *v.* COMMISSIONER OF CHILDREN AND FAMILIES*
### (AC 21570)

Foti, Schaller and Peters, Js.

Argued October 31, 2001—officially released February 12, 2002

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Peter M. Berry,* for the appellant (plaintiff).

*John E. Tucker,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Terese B., a foster parent, appeals from the judgment of the trial court dismissing on jurisdictional grounds her appeal from an administrative decision by the department of children and families (department) upholding the removal of a minor child from her home. The sole issue on appeal is whether the court properly granted the motion to dismiss filed by the defendant commissioner of children and families (commissioner) on the ground that the administrative proceeding was not a "contested case" within the meaning of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., because the plaintiff did not have a statutory right to a hearing. Because we determine that the court lacked subject matter jurisdiction concerning the plaintiff's appeal, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1996, the department placed the child in the plaintiff's foster care. The parental rights of the child's parents later were terminated, and the department became the child's statutory parent. Subsequently, the marriage of the plaintiff and her husband was dissolved. Upon the recommendation of health professionals who evaluated the plaintiff after the dissolution, the department

removed the child from her care pursuant to General Statutes § 17a-100.[1]

The plaintiff requested and received a hearing to challenge the department's removal of the child in accordance with § 17a-100-3 of the Regulations of Connecticut State Agencies.[2] The hearing officer concluded that the removal was appropriate. The plaintiff next appealed to the Superior Court from the department's decision.[3] In response, the commissioner filed a motion to dismiss the case for lack of subject matter jurisdiction. The commissioner argued that the administrative proceeding was not a "contested case" within the meaning of the UAPA because the plaintiff did not have a statutory right to a hearing.[4] The court granted that motion and this appeal followed.

On appeal, the plaintiff claims that the court improperly granted the department's motion to dismiss. Her argument is best explicated if divided into its component parts. First, the plaintiff asserts that as a foster parent, she has a liberty interest in matters of family

[1] General Statutes § 17a-100 provides: "Whenever it is found that any child is not properly treated in any foster family or that any such foster family is not a suitable one and is of such character as to jeopardize the welfare of any child so placed therein, the Commissioner of Children and Families, upon being satisfied of the ill treatment of the child or the unsuitableness of the foster family, shall remove the child from such foster family and take such further action as is necessary to secure the welfare of the child."

[2] Section 17a-100-3 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "The department shall conduct a removal hearing when the out of home care provider, qualified for such hearing under section 17a-100-5 of the regulations of Connecticut State Agencies, disagrees with the department's decision to remove a child from the provider and requests a removal hearing . . . ."

[3] We note that prior to the commencement of the underlying action, the plaintiff filed a petition for a writ of habeas corpus. After the trial court rendered a decision in favor of the department, the plaintiff appealed from that decision to this court, but later withdrew the appeal.

[4] The language of General Statutes § 17a-100, quoted in footnote 1, clearly does not provide for a hearing.

life.[5] She further states that the fourteenth amendment to the United States constitution and article first, § 10, of the constitution of Connecticut protect her from a violation of that liberty interest without due process of law.[6] Relying on those assertions, the plaintiff argues that § 17a-100, the statute pursuant to which the department removed the child, is unconstitutional because it does not guarantee a hearing before removal. She argues that § 17a-100-3 of the Regulations of Connecticut State Agencies, which allows for a hearing, must be incorporated into General Statutes § 17a-100 and read as a part of the statute itself because without that regulation, no hearing would be provided to the foster parent, thereby rendering General Statutes § 17a-100 unconstitutional.

On the basis of those assertions, the plaintiff maintains that "to find that General Statutes § 17a-100 does

[5] The plaintiff has failed to articulate in her brief whether she is claiming that her alleged fundamental right involving a liberty interest in matters of family life arises from our federal or state constitution. Because she has not provided an independent state constitutional analysis or provided any legal authority that determines that the Connecticut constitution grants citizens of this state greater liberties than those afforded under our federal constitution, we will only address the plaintiff's claimed liberty interest as a matter of federal constitutional law. See *State* v. *Smith*, 255 Conn. 830, 835 n.12, 769 A.2d 698 (2001).

[6] The plaintiff again fails to provide an independent analysis of her state constitutional claim. As discussed in footnote 5, we therefore will not address that claim. We further note that with due process claims, the usual state constitutional analog to the fourteenth amendment is article first, § 8, not § 10, of our state constitution. With regard to the relationship between the fourteenth amendment and article first, § 8, we note, without addressing the plaintiff's claim, that we have determined that their prohibitions are the same and that they are given the same effect. *Salmon* v. *Dept. of Public Health*, 58 Conn. App. 642, 653, 754 A.2d 828, cert. granted on other grounds, 254 Conn. 926, 761 A.2d 754 (2000). Therefore, to the extent that the plaintiff, by referring to article first, § 10, is attempting to argue a state constitutional claim other than a violation of the right to due process under article first, § 8, we deem that claim abandoned because the plaintiff has failed to brief the issue. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 38, 717 A.2d 77 (1998).

not contain an inherent statutory right to a hearing as expressed in § 17a-100-3 [of the regulations], would be to set up § 17a-100 as a statute that unconstitutionally deprives foster families their liberty rights without due process of law. It is only through the saving regulation, § 17a-100-3, with its express hearing requirement, that General Statutes § 17a-100 can maintain its constitutional validity.'"[7]

As a threshold matter, we must determine whether the plaintiff has standing to pursue her claim. In her brief, the plaintiff argues that she has standing because of her liberty interest in family life. The commissioner rebuts that contention. Although the court did not decide that issue, we note that the question of whether the plaintiff has standing properly is before us because she has raised and argued the issue in her brief.

At the outset, we note the applicable section of the UAPA that applies to judicial review of administrative decisions. General Statutes § 4-183 (a) provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section . . . ."[8] Although § 4-183 (a) includes several significant terms that will

---

[7] The plaintiff also alludes in her brief to another state constitutional claim. She states that if her appeal is not heard, then the department would be the final authority to decide if article first, § 7, of our state constitution has been violated. We deem that claim to be abandoned, however, because the plaintiff has failed to adequately brief and argue that assertion. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 38, 717 A.2d 77 (1998).

[8] In relation to the subject matter jurisdiction question raised by the "contested case" issue, we note that General Statutes § 4-166 (3) provides in relevant part that " '[f]inal decision' means (A) the agency determination in a contested case . . . ." and that § 4-166 (2) provides in relevant part that '[c]ontested case' means a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."

be discussed, as matters of standing, the term "aggrieved" in § 4-183 (a) is critical.

We further note the applicable law of standing, which we reviewed in *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 771 A.2d 167 (2001). In *Lewis*, the plaintiffs appealed from the judgment of the trial court dismissing their administrative appeal because they lacked standing. Id., 285. Though *Lewis* involved an administrative appeal from the decision of a planning and zoning commission to amend its regulations, our discussion in that appeal about the well established principles of standing is equally applicable to the present case involving the department.

In *Lewis*, we stated that "[a]s a jurisdictional matter, an appellant must demonstrate aggrievement to maintain an administrative appeal. Aggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . .

"Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted.) Id., 288.

Applying that law to the present case, we conclude that the plaintiff did not have standing because she failed to establish either classical or statutory aggrievement. The court, accordingly, did not have jurisdiction over the plaintiff's claim.

To establish classical aggrievement, the plaintiff must meet the previously articulated two-pronged test. The first part of the test requires the plaintiff to demonstrate a specific, personal and legal interest. In the present case, the plaintiff argues that she has a fundamental liberty interest in matters of family life. We are not persuaded by that contention, however, because the plaintiff has failed to inform us of any legal authority that states that a foster parent has a liberty interest in the maintenance of the foster family unit.

There is, in fact, authority to the contrary, namely, *Nye* v. *Marcus*, 198 Conn. 138, 502 A.2d 869 (1985). In *Nye*, the plaintiff foster parents appealed from the judgment of the trial court, claiming that the court improperly quashed their habeas corpus petition on the ground that they lacked standing as foster parents to bring that action. Id., 139. The foster parents argued that their interest in protecting their foster parent relationship with the child was sufficient to grant them standing. Id., 142.

In addressing that claim, our Supreme Court noted that the plaintiffs' argument was based on their emotional relationship with the child as opposed to a biological or legal guardian relationship. Id., 143. The court proceeded to distinguish the rights of foster and biological families. It stated that "[f]oster families differ from biological families in that they have their source in state law and contractual arrangements. . . . Foster families do not have the same rights as biological families or adoptive families. Rather, the expectations and entitlements of foster families can be limited by the state.

. . . Biological and adoptive families have a liberty interest in the integrity of their family unit which is part of the fourteenth amendment's right to familial privacy. . . . Foster care arrangements of the nature and duration considered in the present case do not have this constitutionally protected liberty interest."[9] (Citations omitted.) Id., 143–44.

The *Nye* court continued, stating that "the plaintiffs had no basis for a justifiable expectation that their relationship with [the foster child] would be anything but temporary. . . . We hold, therefore, that under these circumstances the [plaintiffs] do not have standing as foster parents to assert their own interest in the maintenance of their family relationship with [the foster child]. They do not have a liberty interest and their emotional relationship with the child, which was acquired through the temporary foster placement, is too tenuous a basis to afford standing to institute a habeas corpus proceeding against the child's statutory parent and legal guardian."[10] (Citation omitted.) Id., 144.

[9] We note that although *Nye* addressed fundamental rights granted only by the United States constitution, we apply it in the present case because the plaintiff here has failed to clarify whether she is arguing that she has a liberty interest under our federal or state constitution. As stated in footnote 5, we therefore will address only the federal constitutional claim.

[10] We note that *Nye* has been superseded by statute. See General Statutes § 52-466 (f); *Weidenbacher* v. *Duclos*, 234 Conn. 51, 63 n.18, 661 A.2d 988 (1995). In response to *Nye*, our legislature enacted § 52-466 (f), which provides certain foster parents with standing to bring a habeas corpus petition for custody. Id. Specifically, § 52-466 (f) provides: "A foster parent or an approved adoptive parent shall have standing to make application for a writ of habeas corpus regarding the custody of a child currently or recently in his care for a continuous period of not less than ninety days in the case of a child under three years of age at the time of such application and not less than one hundred eighty days in the case of any other child." *Nye*, however, still is instructive in the present case because despite § 52-466 (f), *Nye's* holding that foster parents do not have a liberty interest in maintaining the family unit still is good law. The statutory provision does not overrule *Nye* or create a constitutional liberty interest. Rather, it simply provides foster parents a statutory right. Therefore, the holding still is applicable to the present appeal. Section 52-466 (f) will be discussed further in this opinion.

Subsequent to its decision in *Nye,* our Supreme Court ruled on this issue again in *Hunte* v. *Blumenthal,* 238 Conn. 146, 680 A.2d 1231 (1996). In *Hunte,* the issue was whether foster parents qualify as employees of the state, which would make them eligible for indemnification in a wrongful death action. Id., 147–48. In answering that question, our Supreme Court again distinguished the rights of natural parents and foster parents. The court stated that "[t]he rights of foster parents are defined and restricted by statute. Foster families do not have the same rights as biological families or adoptive families. Rather, the expectations and entitlements of foster families can be limited by the state. . . . Foster parents are entrusted with foster children on a temporary basis only. . . . Foster parents do not enjoy a liberty interest in the integrity of their family unit." (Citations omitted; internal quotation marks omitted.) Id., 164.

In light of our Supreme Court holdings in *Nye* and *Hunte,* we conclude that in the present case, the plaintiff cannot prevail on her assertion that she, as a foster parent, has a liberty interest under our federal constitution in matters of family life and the integrity of the family unit. Because the plaintiff has failed to demonstrate a specific, personal and legal interest, she has failed to establish the first part of the classical aggrievement test. We therefore need not address the second part of the classical aggrievement test.

We next address whether the plaintiff has established statutory aggrievement. For statutory aggrievement, the plaintiff must establish that she has standing on the basis of an injury to an interest that is protected by legislation. In the present case, the plaintiff argues that our General Statutes protect her right of appeal to the courts from a department decision. Specifically, she asserts that this right, arising from her liberty interest, is protected by General Statutes § 17a-100 through its

"constitutionally saving" companion, § 17a-100-3 of the regulations.[11] We are not persuaded by that argument.

Our Supreme Court's decision in *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 620 A.2d 780 (1993), is instructive in our resolution of the plaintiff's claim. In *Lewis*, the plaintiff, a state employee, was terminated from his employment after a " 'pre-disciplinary decision hearing.' " Id., 695. The plaintiff then appealed to the Superior Court pursuant to § 4-183 (a). Id., 696. The defendant filed an answer to the complaint, alleging as a special defense that the court lacked subject matter jurisdiction because the plaintiff had not appealed from a "contested case." Id. After the trial court dismissed the administrative appeal, the plaintiff's subsequent appeal, which claimed that the trial court improperly dismissed the administrative appeal for lack of subject matter jurisdiction, was heard by our Supreme Court. Id., 694, 696–97.

The *Lewis* court first set out the statutory framework for administrative appeals, which is applicable in the present case. It stated that "[t]here is no absolute right of appeal to the courts from a decision of an administrative agency. . . . The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by General Statutes § 4-183 (a) of the UAPA,

---

[11] As discussed in footnote 10, General Statutes § 52-466 (f) does now provide foster parents with standing to bring a habeas corpus petition. We further note that "[i]t is well settled in Connecticut law that a petition for a writ of habeas corpus is a proper procedural vehicle with which to challenge the custody of a child." *Weidenbacher* v. *Duclos*, 234 Conn. 51, 60, 661 A.2d 988 (1995). The statutory protection afforded foster parents in § 52-466 (f), however, is inapplicable to the present case because this is not a habeas corpus action. Additionally, we note, as mentioned in footnote 3, that the plaintiff here first filed for a writ of habeas corpus. After the court found in favor of the department, she appealed to this court, but later withdrew the appeal.

which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . . A final decision is defined in § 4-166 (3) (A) as the agency determination in a contested case . . . .

"A contested case is defined in § 4-166 (2) as a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . . Not every matter or issue determined by an agency qualifies for contested case status. . . . [W]e have determined that even in a case where a hearing is in fact held, in order to constitute a contested case, a party to that hearing must have enjoyed a statutory right to have his legal rights, duties or privileges determined by that agency holding the hearing. . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 699–700.

Having explained that, the *Lewis* court then addressed the plaintiff's claim. In so doing, it specifically reviewed one of the plaintiff's arguments that asserted that his termination qualified as a contested case because the agency had a policy that required it to determine an employee's right to continued employment after the employee had an opportunity to be heard. Id., 703. To support that argument, the plaintiff cited to *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 212, 567 A.2d 1156 (1989), which stated that a proceeding is a contested case if a party has a statutory or regulatory right to be heard.

Our Supreme Court in *Lewis* found that argument unavailing, however, and stated that "[t]he plaintiff mis-

construes *All Brand Importers, Inc.* The court, in *All Brand Importers, Inc.*, cited *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 477 A.2d 119 (1984), in support of the above proposition. In *Herman*, [the Supreme Court] stated: 'In order for a proceeding to qualify as a 'hearing' for the purposes of [a contested case], the party must have a statutory or regulatory right to be heard by the agency.' . . . In *Herman*, the division of special revenue granted a hearing at the request of a plaintiff who wished to be reinstated as a jai alai patron after he had been ejected from the Milford Jai Alai Fronton. The division stated that, although it would provide a hearing, it was not required to do so by statute or regulation. . . . At the hearing, the plaintiff asked that he be reinstated, and his request was denied. On appeal to this court, the plaintiff claimed that the hearing regarding his reinstatement was a 'contested case' under § 4-166 (2) because it was a hearing that was in fact held before the division. In reviewing this claim, the court in *Herman* found that a 'hearing' had taken place; it then addressed the issue of whether the fact that a hearing had actually been held established the proceedings as a contested case under the UAPA. [The Supreme Court] concluded that because the division was not 'statutorily required to determine the eligibility for reinstatement of an ejected patron . . . there was no contested case to which the provisions of the UAPA might apply.' . . . The reference in *Herman*, therefore, to a regulatory requirement for a hearing was dictum."[12] (Citations omitted.) *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 704.

The *Lewis* court continued to distinguish *Herman* and clarify what constitutes a contested case. It stated that "[i]n light of *Herman*, whether a hearing qualifies for contested case status under § 4-166 (2) is a different

[12] In her brief, the plaintiff in the present appeal also relied on the language in *Herman*. On the basis of *Lewis*, that reliance is misplaced.

inquiry from whether a hearing is required by a regulation to be held. Although an agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the agency is statutorily required to determine the legal rights or privileges of the party aggrieved in that proceeding.

"Neither *Herman* nor *All Brand Importers, Inc.*, stands for the proposition that a regulation simply requiring an agency to hold a hearing will qualify a proceeding for 'contested case' status under § 4-166 (2). In *Herman*, upon which *All Brand Importers, Inc.*, is based, we stated: 'The test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is statutorily required to be determined by the agency, (3) through an opportunity for [a] hearing or in which a hearing is in fact held.' . . . Under this test, although agency regulations, rules or policies may require the agency to hold a hearing, that does not constitute a matter as a 'contested case' under § 4-166 (2) unless the plaintiff's rights or privileges are 'statutorily' required to be determined by the agency. If the plaintiff's rights or privileges are not 'statutorily' required to be determined by the agency, a 'contested case' does not exist and a plaintiff would have no right to appeal pursuant to § 4-183 (a)." (Citation omitted.) Id., 704–705.

The *Lewis* court also noted that the plain language of the statutes was clear. It stated "[t]he 'required by statute' language in § 4-166 (2), if construed according to its commonly approved usage, can only mean that before a proceeding qualifies as a contested case, an agency must be obligated by an act promulgated by the legislature to determine the legal rights, duties or privileges of a party. See General Statutes § 1-1. A proceeding in which only an agency rule, regulation or

policy requires a determination of rights after a hearing will not qualify." *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 706.

In light of our Supreme Court holding in *Lewis*, we conclude that in the present case, the plaintiff cannot prevail on her assertion that General Statutes § 17a-100, by way of § 17a-100-3 of the regulations, protects her right to appeal. *Lewis* forecloses that argument because it clearly distinguishes the effect that a statutory hearing requirement has on a person's right to appeal to the courts from the effect of a regulation that provides for a hearing. The applicable statute itself must provide for a hearing. If it does not, a contested case does not arise, and a plaintiff's right to appeal is not protected by statute.[13]

Although *Lewis* itself specifically addressed whether an agency policy that allowed for a hearing creates a contested case, the decision in that case clearly extends to regulations as well. That determination is based on two aspects of *Lewis*. First, the opinion consistently mentions together the terms "rule," "policy" and "regulation." *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 704–705. Second, *Lewis* stated in a footnote that although it was not deciding whether the personnel policy at issue in that appeal constituted a regulation, the court's decision applies to policies, regulations and rules. Id., 703 n.8. Specifically, it noted that "[b]ecause we conclude that the proceedings terminating the plaintiff's employment will not qualify for contested case

---

[13] We further note that the plaintiff's reliance on the regulations to protect her claimed due process right and as necessary to save the statute from its claimed constitutional invalidity is misplaced in light of our determination that she has no liberty interest in family matters. Though her contention that the regulation and the statute must be read together to avoid running afoul of the constitution is without merit, we address whether the plaintiff has established statutory aggrievement, notwithstanding that argument, to conduct a complete analysis of whether she has standing.

status under General Statutes § 4-166 (2) unless the defendants were statutorily required to determine the plaintiff's legal interest, it is unnecessary for us to address whether the personnel policy [at issue in *Lewis*] is a regulation. Neither an agency regulation, policy or rule is sufficient to qualify a proceeding for contested case status . . . ." *Lewis* v. *Gaming Policy Board,* supra, 703 n.8.

We conclude in the present case that the plaintiff has failed to establish that she is statutorily aggrieved because she has not established that our General Statutes § 17a-100 protects her right of appeal to the courts. To establish that, she would need to show that § 17a-100 itself requires a hearing, which would give rise to a contested case, and thereby ensure her access to our courts for appellate purposes. She has not done that, as § 17a-100 clearly does not require a hearing. The plaintiff therefore is left without a right to appeal that is protected by statute. Moreover, as we previously discussed, the plaintiff's argument that § 17a-100 protects that right because it incorporates § 17a-100-3 of the regulations must fail on the basis of *Lewis.*

Because we have determined that the plaintiff has not established that she is either classically or statutorily aggrieved, we conclude that she does not have standing to pursue her claim. In the absence of standing on the part of the plaintiff, the court did not have subject matter jurisdiction to determine her appeal.

The judgment is affirmed.

In this opinion the other judges concurred.