SHARON LEE ALBUQUERQUE *v.*
STATE EMPLOYEES RETIRE-
MENT COMMISSION
(AC 31487)

Gruendel, Lavine and Bear, Js.

Argued September 17—officially released November 9, 2010

*Charles D. Houlihan, Jr.*, for the appellant (plaintiff).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (defendant).

*Opinion*

LAVINE, J. To have standing to bring an appeal from the decision of an administrative agency, a person must

be aggrieved by the decision. See General Statutes § 4-183 (a); *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 399, 920 A.2d 1000 (2007); *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 228, 789 A.2d 1114 (2002). The issue in this appeal is whether the plaintiff, Sharon Lee Albuquerque, was aggrieved by the decision of the defendant, the state employees retirement commission, denying her benefits pursuant General Statutes (Rev. to 1987) § 7-439g.[1] We conclude that the plaintiff was not aggrieved by the defendant's declaratory ruling and that the trial court properly dismissed her administrative appeal for lack of standing. We therefore affirm the judgment of the trial court.

The underlying facts are not in dispute. In 1979, the plaintiff married Anthony Albuquerque (decedent), a Windsor police officer and a member of the municipal employees' retirement fund. When the decedent retired on September 20, 1986, he elected to waive the spousal benefit option, which had the effect of precluding the plaintiff from receiving 50 percent of his reduced monthly pension should he predecease her. See General Statutes (Rev. to 1987) § 7-439g. Consequently, the decedent received a straight life annuity for approximately eighteen years until he died on July 8, 2004. The defendant's retirement service division (division) was informed of his death on July 8, 2004. On February 11, 2005, through counsel, the plaintiff asked the defendant to pay her 50 percent of the monthly benefit being paid

---

[1] On appeal the plaintiff raises the following claims: (1) the court improperly concluded that (a) she lacked standing to assert her right to survivor benefits pursuant to § 7-439g, (b) § 7-448-2 of the Regulations of Connecticut State Agencies implicitly was repealed and (c) the defendant's retirement system did not deprive her of due process of law and equal protection and (2) the defendant illegally authorized her late husband, Anthony Albuquerque, to waive her survivorship rights without her knowledge or consent. Because the question of the plaintiff's standing to bring the administrative appeal is dispositive, we need not address her other claims.

the decedent at the time of his death. She claimed that she was entitled to such spousal benefit as a matter of law, unless she had waived it.

By letter dated April 7, 2005, the division informed the plaintiff that she was not entitled to the 50 percent spousal benefit as the decedent had made a contrary election when he retired. Thereafter, the plaintiff asked the defendant to review the administrative denial. On March 17, 2006, the defendant's subcommittee on purchase of service and related matters (subcommittee) unanimously recommended denial of the plaintiff's claim for a posthumous change of an irrevocable option election made by the decedent when he retired, finding that there were no statutory bases and no extenuating circumstances sufficient to grant the plaintiff's request. On April 13, 2006, the defendant unanimously voted to adopt the recommendation of its subcommittee.

The plaintiff thereafter asked the defendant to review and to reconsider its denial of her claim. The defendant held a hearing on October 19, 2006. At the hearing, the plaintiff's counsel argued that § 7-448-2 of the Connecticut state regulations[2] was formulated in 1979 to require that pension benefits continue to a surviving spouse following the death of a municipal employees' retirement fund member. He also argued that the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., made spousal consent to a member's election a requirement in the retirement process, but acknowledged that Connecticut did not adopt the ERISA consent requirement until 1991.[3] The

---

[2] Section 7-448-2 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "If an employee retires after his election has been approved by the retirement commission and is outlived by his spouse, such spouse shall be entitled to a retirement salary commencing at the employee's death. . . ."

[3] In this opinion, all citations to § 7-439g refer to the version of the statute in effect on the date of the decedent's retirement and election of benefits. Public Acts 1991, No. 91-86, however, amended that section to provide that a member's election to eliminate survivor benefits to a spouse shall not be

plaintiff testified that she did not know of the decedent's straight life annuity election until after his death. Following the hearing, the defendant voted to affirm its prior denial of the plaintiff's request to change posthumously the decedent's election of a straight life annuity to a 50 percent spousal benefit option.

The plaintiff then sought a declaratory ruling from the defendant concerning her right to spousal benefits under § 7-439g. See General Statutes § 4-176 (a).[4] In its declaratory ruling, issued on August 28, 2008, the defendant stated that it had found "no extenuating circumstances present in the record sufficient to justify either the lateness of the election change request or the election change itself. The [defendant found that] there [was] no evidence showing [that] the election made by the member was contrary to the law at the time it was made. The [defendant found] no statutory authorization or 'window of opportunity' that would currently permit such change as requested at the present time. Therefore, even accepting the allegations in the petition as true and according the benefit of every possible inference to [the plaintiff], the [defendant found] nothing in the law or on the record that allows it to change the income payment election that the [decedent] selected at the time of his retirement. Had [the

effective unless the member's spouse consents in writing to the election and such written consent acknowledges the effect of the election and is witnessed by a representative of the municipality or a notary public.

General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." See also *Gormley* v. *State Employees Retirement Commission*, 216 Conn. 523, 529, 582 A.2d 764 (1990); *Flanagan* v. *Blumenthal*, 100 Conn. App. 255, 259–60, 917 A.2d 1047 (2007).

[4] General Statutes § 4-176 (a) provides in relevant part: "Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

decedent] wished to elect his spouse, [the plaintiff], as his survivor, he was required to make such an election either at the time of his retirement, or soon after the receipt of his first regular monthly payment. He did not and therefore his election is binding. Based upon the findings and conclusions contained herein, the [defendant] denies [the plaintiff's] very untimely request to allow a posthumous change in [the decedent's] retirement income payment election from that of straight life annuity to a 50 [percent] spouse option." The plaintiff appealed from the defendant's decision to the Superior Court pursuant to General Statutes § 4-183 (a).[5]

The trial court dismissed the plaintiff's appeal after concluding that the plaintiff lacked standing, citing *McWeeny* v. *Hartford*, 287 Conn. 56, 65, 946 A.2d 862 (2008). In its memorandum of decision, the court stated that "the plaintiff contends that § 7-448-2 of the Regulations of Connecticut State Agencies, providing that a spouse shall be entitled to a retirement salary commencing at the employee's [death, controls] here; the court is not persuaded. Section 7-448-2 was rendered moot when its corresponding statutes, General Statutes §§ 7-439 and 7-439a, were repealed and replaced by . . . § 7-439g. The court notes that [s]ubsequent enactments of statutes are presumed to repeal earlier inconsistent statutes or regulations only to the extent necessary to remove the conflict. *Reddy* v. *New Hampshire Ins. Co.*, 28 Conn. App. 145, 160 n.14, 612 A.2d 64 (1992).

"While § 7-448-2 of the regulations and the corresponding statutes, §§ 7-439 and 7-439a, may have guaranteed payment of retirement income to a surviving spouse, the subsequently enacted statute, § 7-439g, allowed for the unilateral exclusion of a surviving

---

[5] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is *aggrieved* by the final decision may appeal to the Superior Court as provided in this section. . . ." (Emphasis added.)

spouse from retirement benefits. Since § 7-439g is in conflict with § 7-448-2 of the regulations in this respect, the court presumes the latter repealed. Therefore, the plaintiff's reliance on § 7-448-2 of the regulations is misguided." (Internal quotation marks omitted.) The plaintiff appealed to this court, claiming that the trial court improperly determined that she lacked standing to challenge the defendant's declaratory ruling denying her spousal benefits.[6]

A determination of the trial court's subject matter jurisdiction presents a question of law subject to plenary review. See *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003). Judicial review of a decision by an administrative agency is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is very restricted. *Celentano* v. *Rocque*, 282 Conn. 645, 652, 923 A.2d 709 (2007). "With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged

[6] Specifically, the plaintiff claims on appeal that (1) *McWeeny* v. *Hartford*, supra, 287 Conn. 56, is not applicable or relevant to an administrative appeal, (2) the defendant is collaterally estopped from contesting her petition to receive spousal benefits, (3) the defendant's reliance on discredited ERISA cases provides no legal basis on which to deny her standing, (4) she has satisfied the requirements for standing and (5) she has been denied access to the courts in violation of article first, § 10, of the constitution of Connecticut. The fifth claim was not addressed in the trial court and therefore is not reviewable.

with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) Id.

"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 158, 699 A.2d 142 (1997). "Aggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . .

"Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Terese B.* v. *Commissioner of Children & Families*, supra, 68 Conn. App. 228.

This appeal presents a question of statutory aggrievement. "[T]o determine whether a party has

standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within the zone of interests protected by the statute. . . . It has been [noted] that the zone of interests test bears a family resemblance to the scope of the risk doctrine in the law of torts. . . . In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of [statutory] standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty *owed to the plaintiff*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *McWeeny* v. *Hartford*, supra, 287 Conn. 65.

We must, therefore, determine whether the plaintiff is in the class of persons whom § 7-439g was intended to protect. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294–95, 933 A.2d 256

(2007). Moreover, we read statutes together when they are related to the same subject matter. See *Hartford/ Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010).

Our analysis begins with the language of § 7-439g (a), which provides in relevant part: "On and after July 1, 1985, a member of the municipal employees' retirement fund may elect one of the following optional forms for retirement income by filing . . . a written election . . . . A member who has been married at least one year shall be presumed to have elected the option provided in subdivision (1) of this subsection unless a contrary election is made by the member. . . ." General Statutes (Rev. to 1987) § 7-439g (a). Subdivision (1) provides: "A reduced amount payable to the member for his lifetime, with the provision that after his death his spouse, if surviving, shall be entitled to receive a lifetime income equal to fifty per cent of the reduced monthly amount payable to the member." General Statutes (Rev. to 1987) § 7-439g (a) (1). Subdivision (4) provides: "An amount payable to the member for his lifetime, with no payments continuing after the member's death, except for a lump sum death benefit as provided in section 7-440." General Statutes (Rev. to 1987) § 7-439g (a) (4). The term member is defined in General Statutes § 7-425 (5), which provides, in relevant part, that " '[m]ember' means any regular employee . . . receiving pay from a participating municipality . . . ."[7]

We conclude that the language of the statute is plain and unambiguous. By its terms, § 7-439g describes the benefit options available to a member of the municipal employees' retirement fund at the time of his or her retirement and the method of electing an option. The statute contains a presumption regarding spousal survivor benefits for members who have been married for

[7] There is no factual dispute that the decedent was a member and that the plaintiff is and was not a member.

at least one year at the time of retirement, unless the member elects a contrary option. As a result of the presumption, the member will receive a reduced amount payable for the member's lifetime and if the member's spouse survives him or her, the spouse will receive a lifetime income equal to 50 percent of the member's reduced monthly benefit paid at the time of death. The statute, however, clearly states that a member may elect a benefit option that is contrary to the presumption. Pursuant to our construction of the statute, we conclude that § 7-439g was intended to provide retirement funds to members of the municipal employees' retirement fund and their spouses with the proviso that a member may elect to override the statutory presumption of providing benefits for a surviving spouse.

In the case before us, the evidence demonstrates that the decedent rejected the statutory presumption of providing spousal benefits to the plaintiff and elected the option codified in § 7-439g (a) (4), that is, to receive retirement benefits during his lifetime only. The plaintiff has not demonstrated how the defendant's application of the facts of her particular circumstance in its declaratory ruling is contrary to the plain language of the statute. Because the decedent elected to preclude the plaintiff from spousal benefits under § 7-439g, the plaintiff is not within the class of persons the statute was intended to benefit, and she was not aggrieved by the defendant's declaratory ruling. The court therefore properly dismissed the plaintiff's administrative appeal because she lacked standing.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Our conclusion is dictated, not by the actions of the defendant but by the decision the decedent made to waive the spousal benefit option in 1986. We acknowledge that the plaintiff may feel *personally* aggrieved by the defendant's declaratory ruling, but her sense of personal aggrievement does not translate into aggrievement in a legal sense.