******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NANCY BRADY-KINSELLA *v.* STEPHEN KINSELLA
(AC 34391)

DiPentima, C. J., and Prescott and Pellegrino, Js.

*Argued October 8—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Abrams, J.)

*Richard W. Callahan*, for the appellant (plaintiff).

*Helen Apostolidis*, with whom was *Kayleigh E.
Kinsella*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. In this marital dissolution action, the plaintiff, Nancy Brady-Kinsella, appeals from the judgment of the trial court with respect to the court's financial orders. On appeal, the plaintiff claims that the court (1) made clearly erroneous findings of facts as to the value of certain property of the defendant, Stephen Kinsella,[1] and (2) abused its discretion by crafting inequitable financial orders. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff commenced the dissolution action on April 28, 2010. The trial was held on November 8, 9, and 10, 2011. As required, both parties submitted sworn financial affidavits. In her affidavit, the plaintiff stated that she had deferred compensation accounts totaling $25,662. In the defendant's affidavit, there were two separate entries under the deferred compensation accounts section. The first entry reflected an account with The Hartford valued at $31,000; the second entry read "NBK Various accounts," with a value of $25,000, for a total of $56,000. The plaintiff's affidavit stated that she had one automobile with $7000 in equity; the defendant's affidavit listed two automobiles with a combined equity of $20,000.[2] There were no inquiries or explanations as to these particular entries in the defendant's affidavit during the trial.

Upon the conclusion of the trial, the court found neither party at fault for the breakdown of the marriage.[3] It rendered judgment dissolving the parties' marriage and entered several financial orders. In its memorandum of decision, the court found that the defendant owned deferred compensation accounts totaling $56,000 and two automobiles with a total equity of $20,000. The court further found that the plaintiff owned $25,662 in a deferred compensation account and $7000 equity in one automobile. In its orders regarding the distribution of marital property, the court ordered the defendant to transfer $15,169 to the plaintiff to distribute equally the value of the deferred compensation accounts and $6500 to equally distribute the value of the automobiles. The remainder of the marital property also was distributed by the court at that time.

On February 21, 2012, the defendant filed a postjudgment motion for clarification, pointing out factual mistakes in her own affidavit regarding the deferred compensation accounts and the automobile ownership. Specifically, the defendant argued that she had inadvertently included the plaintiff's deferred compensation accounts as well as an automobile once owned by the plaintiff in her own financial affidavit. In her motion, the defendant asked the court to correct the record to "portray the actual circumstances." The court denied the motion on February 7, 2012. Neither party sought

appellate review of the denial of the motion. On March 1, 2012, the plaintiff appealed the dissolution judgment to this court.[4]

I

The plaintiff first claims that she is entitled to a new hearing because the financial orders rest on erroneous entries in the defendant's financial affidavit. Specifically, the plaintiff claims that the court's findings that the defendant had two automobiles valued at $20,000 and two deferred compensation accounts valued at $56,000 were clearly erroneous. In response, the defendant posits that the plaintiff is not aggrieved by the trial court's orders. We briefly address this claim of lack of aggrievement before considering the plaintiff's claims. See *Albuquerque* v. *State Employees Retirement Commission*, 124 Conn. App. 866, 873, 10 A.3d 38 ("[a]ggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction [internal quotation marks omitted]"), cert. denied, 299 Conn. 924, 11 A.3d 150 (2011).

The fundamental test for establishing classical aggrievement is well settled: "[F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specially and injuriously affected by the decision . . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. (Citations omitted; internal quotation marks omitted.) *Med-Trans of Conn., Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 158–59, 699 A.2d 142 (1997).

It is clear that the plaintiff satisfies the first prong of the test. She has a specific, personal, and legal interest in equitable distribution of the marital property. The plaintiff also satisfies the second prong. Throughout the trial, the plaintiff maintained that she was entitled to a share of the defendant's pension. The court, however, did not allocate any share of the defendant's pension to the plaintiff in its financial order, and this appeal focuses on that order. Financial orders are often described as "entirely interwoven" and as "a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Fahy* v. *Fahy*, 227 Conn. 505, 515, 630 A.2d 1328 (1993); see also *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999); *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). We therefore conclude that the plaintiff has standing to bring this appeal.

We now consider the plaintiff's claim that the court

made clearly erroneous findings of fact by first setting forth the appropriate standard of review. "It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 270–71, 7 A.3d 924 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Tracey* v. *Tracey*, 97 Conn. App. 122, 125, 902 A.2d 729 (2006).

Further, "[w]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *In re Selena O.*, 104 Conn. App. 635, 645, 934 A.2d 860 (2007); *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 146, 955 A.2d 60 (2008); *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 78–79, 627 A.2d 1373 (1993), aff'd, 229 Conn. 592, 643 A.2d 233 (1994); *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 112, 609 A.2d 1061(1992).

We note that the court squarely based its financial orders on the sworn financial affidavit that had been submitted by the defendant. See *Spilke* v. *Spilke*, 116 Conn. App. 590, 596, 976 A.2d 69 ("[a] court is entitled to rely upon the truth and accuracy of sworn statements"), cert. denied, 294 Conn. 918, 984 A.2d 68 (2009). Thus the plaintiff's reliance on *Traystman* v. *Traystman*, 141 Conn. App. 789, 794–97, 62 A.3d 1149 (2013) is misplaced. In *Traystman*, the court had made a computational error while estimating the plaintiff's earning capacity. Id., 795–96. As such, the mistake was clearly evident in the record. In this case, however, the court made no computational errors and distributed the marital property relying on the evidence before it.[5]

Moreover, in examining the findings as a whole, we

conclude that the court's findings of fact, even if erroneous, were nevertheless harmless. In the part of the financial orders pertaining to the distribution of the deferred compensation accounts and the automobile equity, the court explicitly framed its orders to equalize the parties' respective shares. As a result of the alleged errors in the defendant's financial affidavit, it appeared that the defendant owned $40,000 more in property than the plaintiff. Therefore, the plaintiff actually benefited from the alleged mistakes, presumably receiving more funds than she otherwise would have. As a result, we are unable to conclude that the plaintiff was harmed in respect to these two categories. Similarly, we are unable to conclude that the plaintiff was harmed by the mistakes when we review the case as a whole, and she fails to explain how she might have been harmed in her appellate brief. In sum, the alleged mistakes, even if erroneous, were harmless, and their existence in this case does not undermine our confidence in the court's fact-finding process so as to require a new hearing. See *In re Selena O.*, supra, 104 Conn. App. 645.

## II

The plaintiff next claims that the court abused its discretion by issuing inequitable financial orders. Specifically, the plaintiff argues that, in light of the court's finding that the defendant had a "significant earning capacity" and the court's apparent equalizing approach to the division of some of the parties' property, the decision to allow the defendant to retain her entire pension from the city of Hartford was an abuse of the court's discretion.[6] We disagree.

The following facts, as found by the court, are relevant to this claim. The parties were married in 1989. At the time of the trial, they had two children. The oldest was nineteen years old and the youngest was fifteen years old. Throughout most of the parties' marriage, the plaintiff had been employed as a licensed optician. At the time of the trial, she reported earning a gross weekly income of $759. The defendant, an attorney who recently had retired from a position as an assistant corporation counsel for the city of Hartford, received a gross weekly pension payment of $1197. At the time of the trial, the defendant was a partner at a small law firm, but had no income from that position. Based on this and other evidence presented at trial, the court found that the defendant had a "significant earning capacity."[7] Despite this finding, however, the court stated in its memorandum of decision that certain personal circumstances beyond the defendant's control would "most likely present some initial hurdles" to a full realization of the defendant's earning capacity. In addition to the deferred compensation accounts and the automobiles discussed previously in this opinion, the court found that the parties owned two separate homes. The plaintiff had $47,666 of equity in the house

she occupied, and the defendant had $252,759 of equity in the home she occupied. The court also found that the plaintiff had $32,963 in personal debt, and the defendant had $89,551 in personal debt.

Having made its findings, the court issued the following financial orders. The defendant was ordered to pay weekly child support in the amount of $172. The defendant was also ordered to maintain medical insurance for the children and to pay 61 percent of all unreimbursed medical and dental expenses for the minor child. In addition to being ordered to compensate the difference between the deferred retirement accounts and the automobiles in the amount of $21,669, the court ordered the defendant to transfer to the plaintiff $104,172 to equalize the value of the equity in the parties' real property. The court also ordered the defendant to procure and maintain a life insurance policy in the amount of $250,000. In addition, the defendant was ordered to pay $1 per year alimony to the plaintiff for a period of 11 years.[8] Finally, even though the defendant retained full rights to her pension, the court ordered her to "immediately notify [the] plaintiff of any income received in excess of her pension . . . ."

Our standard of review of the court's financial orders is well settled. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citations omitted; internal quotation marks omitted.) *Quasius* v. *Quasius*, 87 Conn. App. 206, 208, 866 A.2d 606, cert. denied, 274 Conn. 901, 876 A.2d 12 (2005).

"As a general framework, [t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within [General Statutes] § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001). In this case, the parties do not dispute that the defendant's

pension is a distributable property. It is also clear that the court chose to evaluate the defendant's pension using the "present division" method when it found that the pension weekly payment equaled $1197. The only dispute here is over the court's decision to distribute the entire pension to the defendant. The plaintiff claims that it was an abuse of discretion not to award her a share of the "most valuable asset of the 22 year marriage." The defendant, in turn, argues that the evidence before the court showed that the pension remained the defendant's only source of income, and, therefore, it was not an abuse of discretion for the court to permit the defendant to retain the pension. We agree with the defendant.

As our prior cases have held, "[p]ension benefits are widely recognized as among the most valuable assets that parties have when a marriage ends. . . . Nevertheless, there is no set formula that a court must follow when dividing the parties' assets, including pension benefits." (Citations omitted; internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 111, 920 A.2d 340 (2007). It is also clear that a court can exercise a wide range of discretion in dissolution matters. The distribution of assets in dissolution matters is governed by General Statutes § 46b-81, which provides in relevant part that a trial court "*may assign to either spouse all or any part of the estate of the other spouse.* In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and *sources of income*, earning capacity, vocational skills, education, *employability*, estate, liabilities and needs of each of the parties and *the opportunity of each for future* acquisition of capital assets and *income*." (Emphasis added.)

The court awarded the defendant her pension payments, but it then ordered the defendant to transfer $125,841 to the plaintiff to equalize the distribution of the real property, deferred compensation accounts, and automobiles. In addition, the court ordered the defendant to pay a weekly sum of $172 in child support, maintain life insurance, and pay 61 percent of the minor child's unreimbursed medical expenses, as well as the extracurricular expenses. The court reasonably could have concluded that all of the defendant's financial obligations, including her outstanding personal debt, would have to be satisfied by her only source of income at that time—her pension. Moreover, the court clearly expressed its concern about the defendant's ability to realize her full earning capacity due to "the defendant's recent decision to live as a woman." Importantly, however, the court's decision allows for a modification of the alimony should the defendant's income increase in the future. Under these circumstances, the court's

financial orders did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant is now known as Kayleigh E. Kinsella. Hereafter, references in this opinion to the defendant are to Kayleigh.

[2] The defendant's affidavit listed a 2001 Toyota Tacoma and a 2004 Toyota Highlander, and the plaintiff's affidavit listed a 2011 Toyota Yaris.

[3] The court found that the parties' marriage "was effectively destroyed by defendant's 2010 announcement that she intended to live as a woman." The court declined to assign fault to the defendant, however, stating that the "concept of fault has some level of voluntariness to it, and the court refuses to believe that defendant would have chosen the path she did unless absolutely compelled to do so."

[4] During the pendency of the appeal, after the trial court had denied a separate motion for rectification filed by the plaintiff, this court granted in part the plaintiff's motion for review and ordered the trial court to hold a hearing on the motion for rectification. See Practice Book §§ 66-5 and 66-7. As a result, the record was rectified to include the defendant's amended proposed orders.

[5] We are also not persuaded by the plaintiff's argument that the court was made aware of the mistakes during counsel's arguments at trial or by the submission of the defendant's amended proposed financial order after the judgment. It is well settled that "representations of counsel are not, legally speaking, evidence," and, as such, they cannot properly be considered by the finder of fact. (Internal quotation marks omitted.) *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 26, 783 A.2d 1157 (2001). Similarly, the proposed orders do not constitute evidence either. See Practice Book § 25-30 (d) ("[t]he proposed orders shall be neither factual nor argumentative but shall, instead, only set forth the party's claims").

[6] The plaintiff also argues that the court improperly divided the parties' personal property. In her brief, however, the plaintiff provides no meaningful analysis of her claim. It is well established that an appellate court is "not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." *Wilson* v. *Jefferson*, 98 Conn. App. 147, 166, 908 A.2d 13 (2006). Accordingly, we decline to review this claim on the basis of an inadequate brief.

[7] In its memorandum of decision, the court did not specify a dollar figure to the defendant's earning capacity, and the plaintiff failed to seek an articulation as to the amount.

[8] The court's memorandum of decision specifies that the alimony is modifiable as to amount, but not as to term.